W. JONES et al. *v.* TILMAN LOGGINS et al.

1. HIGH COURT: PRACTICE: WILL NOT NOTICE EXCEPTIONS TO TESTIMONY FILED, BUT NOT DETERMINED ON, IN THE CHANCERY COURT.—This court will not notice exceptions filed to depositions of witnesses in the Chancery Court, unless it appears by the record that these exceptions were considered and determined on by the chancellor.

2. CONTRACT: TIME WHEN ESSENCE OF CONTRACT.—Time is not generally deemed in equity to be of the essence of a contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the agreement.

3. SAME: VENDOR AND VENDEE: TITLE-BOND CONDITIONED TO MAKE TITLE ON PROMPT PAYMENT OF PURCHASE-MONEY.—The condition in a title-bond, "that if the vendee complies *promptly* with his contract, that the vendor" will execute a deed, does not make time of the essence of the agreement; and a failure by the vendee to comply by the payment of the purchase-money when it falls

due, will not, therefore, authorize the vendor to rescind, without an offer to perform on his part. See *Johnson* v. *Jackson*, 27 Miss. R. 498; *Stewart* v. *Gates*, 30 Ib. 100; *Eckford* v. *Halbert*, Ib. 273; *Walton* v. *Wilson*, Ib. 576; *Arther* v. *Pearson*, 32 Ib. 131; *Prophit* v. *Robinson*, 34 Ib. 141.

4. VENDOR AND VENDEE: AGREEMENT TO RESCIND: CASE IN JUDGMENT.—An agreement between vendor and vendee, after failure of the latter to pay the purchase-money, in pursuance of the stipulations of the title-bond, to rescind the contract, according to the determination of arbitrators, who were to assess the value of the improvements made by the vendee, and the amount of the rent to be charged to him; is not a valid rescission, if the arbitrators be not appointed, and if the vendee retain possession of the land, and the vendor keep the notes given for the purchase-money.

5. SAME: POSSESSION OF LAND NOTICE.—Possession of land is notice to the owner of the title or equity of the occupant.—See *Dixon* v. *Lacoste*, 1 S. & M. 70; *Hall* v. *Thompson*, Ib. 443; *Witby* v. *Hightower*, 6 Ib. 345; *Walker* v. *Gilbert*, 7 Ib. 456.

APPEAL from the Chancery Court of Rankin county. Hon. John Watts, chancellor.

The facts of this case appear to be in substance as follows: In December, 1852, Daniel Jones made a verbal agreement with E. H. Lombard, for the purchase of a quarter section of land situated in Rankin county, at the sum of $320, payable in four equal annual instalments, with six per cent. interest. Under the contract, Jones entered into possession and commenced making improvements on the same. In a few days thereafter, Tilman Loggins, at the suggestion of Jones, purchased a tract of several hundred acres (embracing the land sold to Jones), and received a deed therefor, the vendor reserving a lien for the purchase-money. Loggins was informed by Lombard of the verbal agreement to sell the quarter section to Jones, and was requested by Lombard to carry out that agreement, which Loggins promised to do. On the 1st day of January, 1853, Loggins executed the following bond for titles, which is referred to in the bill as Exhibit B.

"State of Mississippi, Scott county:

"Know all men by these presents that I have sold to Daniel Jones the southeast quarter of section 28, township 8, range 5 east, for four hundred dollars, payable in four equal instalments: the first falls due the 1st January, 1854; the second, the 1st January, 1855; the

third, in 1856, the fourth in 1857. Now, if the said Jones complies promptly with his contract, I bind myself to give him a good deed."

At the same time, Jones executed his notes for the instalments as above stated.

In February, 1852, Jones sold to said Loggins, for $480, a tract of land which he (Jones) had previously purchased from one Burks. It was a part of the agreement for the sale of the land, that Jones should convey the title to Loggins's wife, which he did, and that Loggins should pay to Burks a judgment for about $250, which he (Burks) had recovered against Jones for the balance of the purchase-money of the land, and should pay the balance to Jones. It appears that Jones never paid this judgment to Burks, but bought the same through one Edwards for $75. In the early part of 1856, Jones having up to that time failed to make any payment on the land, but having made improvements to the value of about $96, agreed with Loggins that a rescission of the contract should take place, upon the determination by arbitrators, to be selected by the parties, how much he should be allowed for his improvements, and how much he should be charged for the rent. The arbitrators were never selected, and Jones, soon after the agreement was entered into, declined, upon the application of Loggins, to select arbitrators, alleging that the agreement to arbitrate had been abandoned. About this time Loggins sold the land to A. Robbins. Jones continued in possession of the land from December, 1852, up to his death, after the commencement of this suit; and Loggins retained possession of the note for the purchase-money.

In November, 1856, Jones tendered the whole amount of the purchase-money and interest to Loggins, and demanded a deed, which Loggins refused to give, alleging that he had sold to Robbins.

At the commencement of this suit, in March, 1857, Loggins was indebted to Lombard in about $650, being the amount unpaid in the purchase of the land before-mentioned. For the payment of this sum, Lombard had a lien on all the lands sold to Loggins, including the quarter section sold by Loggins to Jones; and he soon afterwards commenced proceedings to enforce his lien, and in the

year 1858, did procure a decree condemning all of the land to the payment of said balance.

The object of this bill, which was filed by Jones against Loggins and wife, A. Robbins, and E. H. Lombard, was to enforce as against Loggins the specific performance of the contract for the sale of the quarter section, as contained in Exhibit B., heretofore set out; and to set-off against the purchase-money the amount due by Loggins on land-lease of February, 1852; and to annul the deed made by Loggins to Robbins; and to compel Lombard to exhaust the remaining lands, sold by him to Loggins, to satisfy his debt, before proceeding to enforce it on that portion of the land which was sold to Jones.

Jones died during the pendency of the suit, and the bill was revived in the name of his administrator and heirs.

The depositions of Jacob Robbins and Edwards were taken on behalf of defendant Loggins; and to their depositions exceptions were filed, but the exceptions do not appear to have been determined on by the court.

On the final hearing, the chancellor dismissed the bill, and complainants appealed.

*W. C. Harper*, for appellants,
Cited *Johnson* v. *Jackson*, 26 Miss. R. 498; *Arther* v. *Pearson*, 32 Id. 131; *Waddlington* v. *Hill*, 10 S. & M. 560; *Peques* v. *Mosby*, 7 Id. 340.

*George T. Swann*, for appellees,
Cited 2 Story Eq. § 771, and authorities there cited.

HARRIS, J., delivered the opinion of the court.

This bill was filed by Daniel Jones, complainant's intestate, against Tilman Loggins and his wife, Helen, Albert Robbins, and Ephraim H. Lombard, to enforce the specific performance of a contract for the sale of land against defendant Loggins, to cancel a deed executed for the same land to Robbins by Loggins, as fraudulent and void against complainant, and to restrain defendant Lombard, from whom Loggins purchased the land, sold to complainant with a large body of other lands, from selling the land claimed by complainant, to satisfy his vendor's lien against Loggins, until he

shall have first exhausted the balance of the land subject to his lien; and lastly, for an account with Loggins, in relation to the amount equitably due him on said purchase.

As connected with the history of the transaction, and as inducement to relief sought against Lombard, the bill sets out by stating a verbal contract of sale, agreed on between Lombard and complainant, for the same land afterwards sold, by the agreement marked Exhibit B. to complainant's bill, by said Loggins to complainant.

The bill states, that complainant entered into this verbal contract with Lombard, which was to have been subsequently closed; that complainant procured Loggins as his agent to go to Brandon, in order to close said contract by writing; that Loggins fraudulently purchased the land in his own name, with other lands, and at the request both of Lombard, made at the time of his purchase, and of complainant subsequently, agreed to sell the land mentioned in Exhibit B. to complainant; that complainant was then in possession of said land under the verbal agreement with Lombard; that since said purchase he has made valuable improvements, worth $700; that it is his only residence, &c. &c. The bill then proceeds to state a fraudulent conveyance made to Robbins, on the 4th April, 1856, and charges that Robbins was unable to make such a purchase; that Loggins has never paid Lombard for said land, and is unable to comply with his contract with complainant; that complainant has tendered to said Loggins the full amount due him on said contract, with which Loggins refused to comply, on the ground that he had sold said land to Robbins, and rescinded the contract marked Exhibit B.

The bill next states that Lombard is about to foreclose his lien on the land, and admits its liability, but insists that Loggins should be compelled to satisfy said liability, or that his property should be first exhausted.

The bill lastly states, that about 7th September, 1849, complainant purchased certain lands lying in Scott county from Milton H. Burks and wife, and received a deed therefor, Exhibit D., and agreed to pay therefor $480; that he paid a part of the purchase-money, and afterwards, being unable to pay the balance, the said Burks sued him, and obtained a judgment for the sum of $262 50 in the Circuit Court of Scott county, which was returned *nulla*

*bona;* that being willing to pay said debt, about the 1st February, 1852, he sold said land to said Loggins for the sum of $480, and at his request executed the deed to his wife, Helen; that said deed was executed in consideration that said Loggins would pay the amount of said judgment due said Burks and the remainder to complainant; that he took no security for said sum from said Loggins, and has not been paid, except a small amount stated in the bill. The bill further states, that at the time of Robbins's purchase complainant was in the open and notorious possession of said land in dispute, and Robbins was fully aware of complainant's right; that Loggins is insolvent.

Waiving all notice of the irrelevant matter stated in the bill in relation to the parol contract for the sale of the land, as well as the relief prayed for in relation thereto, it will be sufficient to say the prayer of the bill may be considered as asking a specific performance of the written contract, Exhibit B.; a cancellation of, or perpetual injunction against, the deed to Robbins; a decree that Loggins shall pay the purchase-money due to Robbins, or, in the event that he is unable so to do, that complainant's claim to the land in dispute shall not be defeated by Lombard's vendor's lien against Loggins, until the other lands purchased by Loggins from Lombard shall have been first exhausted; and finally, an account between complainant and Loggins, and a decree against Loggins for specific performance, upon payment of such sum, if any, as may be found due said Loggins by complainant on said account. Three grounds of error are relied on in this record for a reversal of the judgment of the court below. The two first relate to the testimony of Jacob Robbins.

It is insisted that he is a party to the record, as well as a party interested in the result of the cause.

No order directing or allowing his examination as a witness appears in the record, nor does it appear anywhere in the record that *Jacob* Robbins, the witness, ever was a party to the *record* or a party in *interest*. *Albert* Robbins is made a party, but not Jacob. We presume, therefore, that the assignment originates in a mistake of counsel.

These objections to the deposition of witness, Jacob Robbins, are both based on exceptions taken and filed in the court below to said

deposition; but it nowhere appears in the record that they were ever considered or determined by the court, and consequently no error can be assigned on these points.

The last ground of error assigned, is that the court erred in the final decree, dismissing complainant's bill.

Treating the bill under the general prayer for relief, as simply a bill to enforce the specific performance of the agreement, filed as Exhibit B. to complainant's bill, the propriety of this decree depends on the question whether the agreement filed as Exhibit B. has been rescinded, or is still in force.

The contract or agreement sought to be enforced by this proceeding is in the following words:

"State of Mississippi, Scott county:

"Know all men that I have sold to Daniel Jones the southeast quarter section 28, township 8, range 5 east, for four hundred dollars, payable in four equal instalments: the first falls due the 1st January, 1854; the second, the 1st January, 1855; the third, 1856; the fourth, in 1857. Now, if the said Jones complies promptly with his contract, I bind myself to give him a good deed.

(Signed)     "TILMAN LOGGINS".

"January 1st, 1853."

It is insisted that the language of this contract shows that the time of performance by the vendee was of its essence, and that the failure to pay "promptly" at the time specified, entitled the defendant to a rescission of the contract.

Time is not generally deemed in equity to be of the essence of a contract, unless the parties have expressly so treated it, or it necessarily follows from its nature and circumstances.

There is nothing in the language of this contract to make it an exception to the general rules governing mutual and dependent covenants. Take the word "promptly" away, and it is the ordinary contract for the sale of real estate; and the addition of the word gives no greater force to the instrument before us, or the obligation of payment on the day specified, than if it had been omitted. The case of *Johnson* v. *Jackson*, 27 Miss. R. 498, was a case where "punctual payment" was promised. And the court held that the

contract was mutual and dependent, and that neither party could insist upon performance by the other, without performance, or readiness to perform on his part, citing and approving several cases previously decided in this court.

In the case of *Stewart* v. *Yates*, it is said by the court in reference to the right of rescission, that, after indulgence granted for an indefinite time, the vendee could only be placed in default by a demand made on the part ef the vendor, and that a tender of payment even then is a sufficient offer to perform by the vendee. 30 Miss. R. 100; *Eckford* v. *Halbut et al.* Ib. 273.

In *Walton* v. *Wilson*, Ib. 576, it is said the vendor of land who has executed a bond to make title upon payment of the purchase-money, cannot elect to abandon the contract upon the mere failure of the vendee to pay the purchase-money, without having made a valid offer to perform his part of the contract.

And in *Arther* v. *Pearson*, 32 Ib. 131; and *Prophit* v. *Robinson*, 34 Ib. 141, the same rule is reaffirmed.

It nowhere appears in this record that the vendor, Loggins, has ever offered to perform his part of the contract, as required by the authorities just cited. On the contrary, it appears that he has never *himself* had a disincumbered title until since the filing of this bill. It further appears from the proof in the record, that complainant tendered to the defendant the full amount due him on said contract, and demanded title, which was refused.

It is insisted, however, that there was an agreement made between the parties for rescission, which terminated the contract here relied on.

The evidence shows that such arrangement was at one time in contemplation between them, but it is quite clear that it was never completed. It was designed to have referred their differences to arbitrators upon the basis of an agreed rescission; but the arbitrators were never chosen, the complainant never abandoned his possession of the premises, the defendant never delivered up or offered to return complainant's notes, nor, indeed, was the agreement for rescission ever perfected, so as to give it binding force on either party.

Regarding the contract, marked Exhibit B., as in full force, and not rescinded, we see nothing in this record to prevent its enforce-

ment. We, therefore, think the court erred in dismissing complainant's bill.

So far as the defendant, Alfred Robbins, is concerned, the record shows that he was a purchaser with full notice of complainant's equity; and he cannot be heard in a court of equity, therefore, to claim any greater rights than his vendor Loggins. The complainant was in possession of the premises in dispute at the date of his purchase; and that possession was notice to the world of the title or equity of the occupant, whether recorded or not. *Dixon* v. *Lacoste,* 1 S. & M. 70; *Hall* v. *Thompson,* Ib. 443; *Witby* v. *Hightower,* 6 Ib. 345; and *Walker* v. *Gilbert,* 7 Ib. 456.

Let the judgment be reversed, and cause remanded, for further proceedings in accordance with this opinion.