Corinth Bank & Trust Co. *v.* Wallace et al.

[71 South. 266.]

1. Mortgages. *Priorities. Leases. Assignments. Constructive notice. What constitutes. Lien.*

A lease contract for a portion of a building which reserved a fixed rate was assignable at common law, before the enactment of Code 1906, sections 2877, 2878-4001, and these statutes simply enlarge the right of the assignee, and have no effect on the question whether the lessor's mortgagee was charged with notice of an assignment or an unrecorded lease.

2. Mortgages. *Assignment of lease. Constructive notice. What constitutes.*

Where the lessor of premises was manager and president of a bank in which the lessee had a deposit and the rents were charged to the less monthly by the bank, such fact was not notice to the lessee that the lease had been assigned to the bank; and the lessor's mortgagee was not charged with notice of an assignment of the lease even though it be deemed to have constructive notice of the facts within the knowledge of the lessee.

3. Mortgages. *Lien. Constructive notice. What constitutes.*

A *bona-fide* mortgagee for value without notice is not chargeable with an unrecorded assignment of a lease. The assignee or owner of the lease should protect himself by having his lease acknowledged and recorded. When he fails to do this, his rights are always subject to that of a purchaser or mortgagee for value and without notice.

APPEAL from the chancery court of Alcorn county.
HON. J. Q. ROBINS, Chancellor.

Bill of interpleader by Charles A. Gish against the Corinth Bank & Trust Company and W. F. Wallace. From a decree in favor of Wallace, the bank appeals.

The facts are fully stated in the opinion of the court.

*Thos. H. Johnson* and *W. J. Lamb,* for appellant.

In reading appellees' brief, one would naturally infer that counsel are under the impression that a lease was not assignable at common law, but could only be assigned by virtue of the provisions of some statute. They contend that Taylor, the lessor, had the right and power to assign and transfer the lease because they say it is specially so provided by secs. 2877 and 2878, Code of 1906. Neither of these two sections of the code give the lessor a right to assign the lease—he had that right before these laws were enacted. section 2877 simply provides what advantages the "grantees or assignees of lands let to lease, or the reversion thereof, etc." have against the "lessees, their executors, etc.;" in other words it gives the grantees or assignees of lands let to lease the same rights against the lessee that the lessor himself had. It enlarges the right that the grantee or assignee had by virtue of his grant or assignment under the common law; for, under a common law assignment the assignee had no right of action against the lessee on covenants that run with the land. This right could only be given by statute. 24 Cyc. 930. Section 2878 is practically the converse of the preceding section and gives the lessee the same rights against the assignee that he would have had against the original lessor, his heirs, etc.

Counsel also cites as authority for Taylor's right to assign the lease section 4001, Code of 1906, which is commonly known as the "Anti-Commercial Statute." This section of the code only provides that promissory notes and other writings for the payment of money or other

thing, may be assigned by indorsement, whether the same be payable to order or assign or not, and gives the assignee the right to sue on the same in his own name when it is so endorsed, and gives the defendant the benefit of the defenses which he would have had against the payee. If this section of the code had any application in the case at bar, where the right to assign the lease is not questioned, and the only question, involved is the notice of such assignment, it would have no application in the case for the reason that Taylor, the lessor, did not assign the lease by indorsement, it was simply turned over to the Tishomingo Savings Institution and by it entered on the note registered and no credit was given Taylor for the same. The bank would not have had the right to bring suit on the lease in its own name. ' The lease was not indorsed by Taylor until the attempted assignment made by Taylor and the bank to appellees long after appellant's trust deed had been recorded.

In view of the provisions of the statute of frauds, which requires that a lease for a longer term than one year must be in writing, and section 2763, Code of 1906, which provides that such an estate cannot be conveyed from one to another unless the conveyance be declared by writing signed and delivered; and section 2787, Code of 1906, which requires such conveyance to be acknowledged or proved and filed for record in order to be valid against subsequent purchasers or encumbrancers. for a valuable consideration and without notice it does seem to us, when we examine the records and find no lease recorded, we would be justified in assuming that the tenant who was in possession had a lease for one year or less, and that we would be chargeable with notice of that fact and that alone; but the courts have held to the contrary, and while we do not now quarrel with these decisions, although it does seem to us that they open the door wide to fraud, we do ask that this doctrine of constructive notice be not extended to the unwarranted length of holding that ten-

ant's possession is also notice that his landlord has as-
signed the lease.

Counsel seems to think that the supreme court of Mich-
igan would have decided the case of *Steel* v. *DeMay, et al.,*
60 N. W. 684, differently if there had been a statute in the
state of Michigan similar to the Mississippi statutes cited
by them.  We cannot say whether there are statutes in
Michigan similar to ours or not, but we fail to see how
these statutes could possibly affect the question of con-
structive notice, which was the only question involved in
that case at bar. While the case of *Bloodworth* v. *Stevens,*
51 Miss. 475, is not in point on the question involved, the
rule of law is announced that rent is an incident to the
reversion and before maturity follows the title to the
premises; and this too in the face of two sections of the
Code of 1871, which are identical with sections 2877 and
2878, Code of 1906.

The case of *Dunton* v. *Sharpe,* 1 Miss. 231 does not, as
counsel contend, bear directly upon the question at issue.

The question then is as before stated, viz., "Was the
tenant's possession of the leased premises notice of the
fact that the landlord, who held the record title to the
building, had assigned the lease?"  The case of *Steel* v.
*DeMay,* Ib., answers this question in the negative.  This
is the only case that we have been able to find where the
precise question is decided.

Taylor had as much right to sell the property outright
to the Tishomingo Savings Institution as he had to as-
sign the lease; and yet our courts have held that if he
had sold the same to the Tishomingo Savings Institu-
tion, and that concern without having recorded its deed,
had retained Gist as its tenant under an agreement to
pay it the rent, that this would have been no notice to
appellant of the unrecorded deed.  *Loughridge* v. *Bow-
land,* 52 Miss. 346; *Claiborne* v. *Holmes,* 51 Miss. 153.

In principle, there can be no difference between the sale
of the leased premises, the tenant remaining in posses-
sion, under an agreement to pay rent to the vendee; and

the assignment of a lease for a longer term than one year, the tenant remaining in possession and attorning to the new landlord, there being nothing in either case which would attract the attention of a stranger to the transaction.

If counsel for appellees are correct in their contention that because of the fact that Taylor had the right to assign the lease, the assignee of the lease had the right to collect the rents which had not matured, regardless of the rights of *bona fide* purchasers of the leased property, many cases would arise where no amount of diligence on the part of such purchaser would render them safe in purchasing the leased property, as long as a tenant was in possession.

Appellees would have been amply protected if the lease and the assignment to the Tishomingo Savings Institution had been recorded, and it would have been an easy matter to have done so; but appellant would be absolutely without protection. It would render it easy indeed for the unscrupulous to perpetrate fraud if the doctrine of constructive notice is carried as far as the court below was bound to have done in order to find for appellees.

*Young & Young,* for appellee.

There can be no question about the right and power of the lessor, Taylor, to transfer and assign said lease contract, as the same was and is especially so provided by statute—Code 1906, secs. 2877 & 2878, and again all notes and contracts for the payment of money are expressly made assignable by Code of 1906, section 4001.

It would be a delusion and a snare for the statute laws to make a lease contract assignable and then the courts hold, that an after mortgagee, who did not have notice of its assignment and who should thereafter become the purchaser of the property at foreclosure sale under such mortgage, would, notwithstanding such prior assignment to another of said lease contract, be entitled to col-

lect and appropriate the rents arising under the lease contract thus assigned, as against the assignee thereof.

If the assignment of the lease in question had been subsequent to the mortgage, then, without question appellant would be entitled to the rent, but the assignment having been made prior to the mortgage without question, appellee is entitled to the same.

That the lease contract was not recorded makes no difference in this case, since the lessee was in the actual possession and occupancy of the leased property at the very time appellant's mortgage was given, and it is conceded by appellant to have been constructive notice to it of the existence and contents of said lease contract, but it insists it was without notice to appellant of the assignment thereof to the said Tishomingo Savings Institution and in support thereof cites the case of *Steel* v. *DeMay et al*, decided by the supreme court of Michigan, 60 N. W. page 684, which is not accessible to appellee, but he feels satisfied, that there are no statute laws in the state of Michigan authorizing an assignment of lease contracts such as is provided in the statute laws of the state of Mississippi, referred to above, else, the courts of Michigan would have held differently.

The only Mississippi case that counsel for appellee have been able to find bearing directly on the question at issue, is the case of *Dunton* v. *Sharpe,* found in Mississippi Decisions Vol. 1, page 231. In that case the rent notes were given December 28, 1882, for the rents of a farm for the years 1883, 1884 and 1885. A mortgage was given on the land afterwards on January 31, 1883 and recorded February 6, 1883. Some of the rent notes were assigned prior to the recording of the mortgage and some of them afterwards, but all prior to the foreclosure sale under the mortgage. The supreme court, in its opinion on page 237, speaking through Judge Cooper, said: "The rents having passed to the mortgagee, they, of course, pass from him to the purchaser under the foreclosure proceedings and as against the assignee of the notes who

took them after the execution of the mortgage, such purchaser is entitled to them." In other words, the court, in effect, says, that as to the notes assigned prior to the mortgage, the assignee thereof is entitled to the rents, but as to the notes assigned subsequent to the mortgage, the purchaser at the foreclosure sale was entitled to the rents which undoubtedly is correct.

SYKES, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Alcorn county upon an agreed statement of facts which is, in substance, as follows: On June 14, 1906, the complainant, Charles H. Gish, and one J, W. Taylor entered into a written lease contract whereby said J. W. Taylor leased to Charles H. Gish, for a consideration of one thousand, two hundred dollars per annum, the south half of the first floor of a brick building known as the Opera House building in the city of Corinth, Miss., said lease beginning the 1st day of September, 1906, and to end on the 1st day of September, 1911, with the option in the said Gish of renewing the lease for an additional three years. This lease was duly signed by the lessor and lessee, but was neither acknowledged nor recorded in the chancery clerk's office in Alcorn county. On the 29th day of April 1907, J. W. Taylor, the owner of said opera House building borrowed from the Corinth Bank & Trust Company twenty-five thousand dollars for which he gave his note and executed a trust deed upon the lots on which said Opera House building was located, which trust deed was duly filed for record and recorded in trust deed book in the chancery clerk's office in Alcorn county. It is agreed that Taylor was the owner of the lots and building, both at the time he executed this trust deed and, at the time he executed the lease to the said Gish. It is further agreed that the trustee in the deed of trust, on the 22d day of June, 1908, sold the property under the terms of said trust deed, and that the Corinth Bank & Trust Com-

pany became the purchaser of said property, and that the trustee executed deed to same on the 24th day of June, 1908, which deed was promptly and duly recorded in the chancery clerk's office in accordance with law; that the said bank immediately went into possession of the property so purchased; that the lessee Gish is occupying and using the property leased to him under the lease and has been in possession of it since the execution of same; that the said bank is collecting rent from all of the tenants in said building except the said Gish, who has declined to pay rent to said bank. It is further agreed that the said lease was never recorded in the chancery clerk's office of Alcorn county; also that the Corinth Bank & Trust Company had no notice of the lease contract, or knew of its existence, until some time after the execution of the note and deed of trust to it by the said Taylor. It is further agreed that the said bank knew that Gish was in possession of and occupying the said house and premises on the day and date that the said trust deed was executed and on the day of the sale by the said trustee. It is further agreed that on the day the lease contract was signed the said J. W. Taylor assigned said lease contract to the Tishomingo Savings Institution in the following manner, as is stated by the said J. W. Taylor:

"I, on the same date, assigned the lease to the Tishomingo Savings Institution by entering the same on the note register of the Tishomingo Savings Institution, and they belong to the bank when they are entered on the said register. I was entitled to a credit on my individual account in said bank for the assignment of this lease, but I was never given any credit for the same."

It is also agreed that J. W. Taylor was president and general manager of the Tishomingo Savings Institution, and that he owned the principal amount of the capital stock of said institution and that both he and the institution are insolvent. The agreement further shows that Gish had a deposit account with the said Tishomingo Savings Institution, and that the installments or rent as

the same matured were charged each month against the said Gish's account in the bank. The agreement further shows that on December 10, 1907, J. W. Taylor and the Tishomingo Savings Institution assigned in writing the said lease contract of Gish to W. F. Wallace. It is further agreed that after the assignment of the lease contract to the said Wallace, Gish has been paying the monthly rental as the same matured to the said Wallace until the sale and purchase of said property by the Corinth Bank & Trust Company. The Corinth Bank & Trust Company and the said Wallace are both claiming that the rents be paid them by the said Gish. Under this statement of facts Gish filed his bill in the chancery court of Alcorn county, praying that the court decree to whom he shall pay these rents, and making the bank and Wallace defendants. Both defendants filed their answers, each claiming the rent under said contract. The learned chancellor entered a decree in favor of W. F. Wallace, from which decree the Corinth Bank & Trust Company prosecute this appeal.

It is the contention of the appellant that the possession of the tenant Gish was notice to the Corinth Bank & Trust Company: First, of the terms of the lease of Taylor to Gish; and, second, of its having been assigned by Taylor. Appellant admits that the possession of the tenant Gish is constructive notice of the lease or tenancy and of its terms, but denies that it is notice of the assignment of same.

Appellee contends that since the lease is assignable under sections 2877, 2878, and 4001 of the Code of 1906, it would be a delusion and a snare for the courts to hold that a mortgagee does not have notice of this assignment at the time of the execution of the mortgage. A lease contract of this character, however, was assignable under the common law before the enactment of the statutes referred to by counsel for appellee. These statutes simply enlarge and broaden the rights of the assignee of the lease under them under certain circumstances which are not in-

volved in this case. Consequently, these sections have nothing to do with the determinng of the case at bar.

Section 2763 of the Code of 1906 provides that an estate for a term of more than one year in lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered. Section 4775 provides that an action shall not be brought whereby to charge a defendant or other party upon any contract for the sale of land, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year, unless the promise or agreement be in writing, etc. Section 2787 of the Code provides that all conveyances of lands, whether made for passing an estate of freehold or inheritance, or for a term of years, shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county to be recorded, etc.; but the same as between the parties and their heirs, and as to all subsequent purchasers with notice or without valuable consideration, shall nevertheless be valid and binding. An examination of the above sections shows that it is the general scheme and purpose of our law, relating to contracts with reference to lands, that they should be recorded in order to give notice to all parties dealing with these lands; that if they are not recorded, then no one is bound by any agreement not filed for record unless he has actual knowledge or constructive notice of the same. It is also the law that the evidence relating to constructive notice must be positive. In this case this notice is attempted to be fastened upon the appellant because of the possession of the tenant Gish.

It is to be remembered, however, that the contract of lease was made between J. W. Taylor and Gish, and, at best for the appellee, appellant is only charged in this case with the terms and conditions of the lease, namely, that Gish had leased the building at a certain stated price for a period of years from J. W. Taylor. It was not in-

cumbent upon the appellant, however, to make any inquiry whatever save as to the terms of the lease. In fact, the record is absolutely silent that Gish himself had notice of the assignment of the lease. The agreed statement of facts shows that J. W. Taylor, the lessor, was the manager and president of the Tishomingo Savings Institution, and that Gish had a deposit in this bank, and that the rents were charged to him monthly by the bank. It is perfectly natural for Gish to have assumed that this was being done for the benefit of Mr. Taylor, since the record shows that Taylor was the active manager and owner of a large part of the stock of this bank. Consequently the case of appellee would fail even if the court should hold that whatever knowledge Gish had of the assignment of this lease was chargeable to the Corinth Bank & Trust Company. This, however, is not the law. In passing upon this question of constructive notice, this court, in the case of *Claiborne* v. *Holmes*, 51 Miss. 146, says:

"It is contended that aside from the question of registration, Thatcher had notice of the conveyance to Mrs. Dunbar. It is not pretended that Thatcher had positive knowledge of the deed, but that he had knowledge of facts from which notice should be inferred. The alleged fact is the possession by Mrs. Dunbar after her purchase. It is laid down in many cases that possession is notice, or a fact from which it may be inferred. *Dixon & Starkey* v. *Lacoste*, 1 Smedes & M. 107; *Wilty* v. *Hightower*, 6 Smedes & M. 345; *Jones* v. *Loggins*, 37 Miss. 546. The subsequent vendee, with notice, is a purchaser *mala fide*. Where the evidence, as in this case, is to fix the notice inferentially, the circumstances ought to be positive, distinct, and emphatic. The notice must be clearly proved. *McMechan* v. *Griffing*, 3 Pick. (Mass.) 154, 15 Am. Dec. 198."

In the case of *Loughridge & Bogan* v. *John Bowland*, 52 Miss. 546, this court, through Chief Justice Simrall, said:

"Possession by the vendor under an unrecorded deed is notice to creditors. Possession is a badge of ownership and evidence of a right. If the debtor has parted with the possession, a creditor is interested to know the nature and extent of the right, and is therefore put upon inquiry and is esteemed to know the truth to which investigation would lead. But, that possession may have the effect of protecting the title under which it is held, it must be of that character which would arrest attention. . . . Possession was laid hold of as a circumstance from which notice may be inferred; but, like other inferences, it depends for its force on the nature of the fact from which it is deduced. The reason which underlies the doctrine is that it is a fraud—an act of *mala fides*—for a creditor or purchaser who had knowledge of a prior sale and purchase to attempt to defeat the purchaser's right by getting his estate. . . . 'There was no change in the occupancy of the land. At the time of the sale Chears was in possession, by his tenants. After the sale the same tenants continued to hold, on an agreement to pay rents to Loughridge & Bogan. Nothing more occurred than a technical attornment of the tenants to them. There was a transfer of the title, but no change of possession that a stranger could observe. The actual occupancy in March and April after the sale, was just as it had been the prior months of the year. In all this there was nothing to arrest notice or to put a creditor or purchaser on inquiry.' "

In the case at bar Gish came into possession as a tenant of Taylor. There was no change in this tenancy whatever after the assignment of the lease. There was no knowledge of its assignment shown by said Gish, and there was no acknowledgment in any way by him or recognition of any other landlord than Taylor, so far as this record shows. In this respect the case is a much stronger one in favor of the appellant here than the case from which we have above quoted. In the Bowland Case there was notice shown in the tenants of the sale, and technical attornment by them to the new landlord, but

the court held that the purchaser was not chargeable with such notice. We regard this case as decisive of the one under consideration.

A case directly in point is that of *Steel* v. *De May et al.,* 102 Mich. 274, 60 N. W. 684, decided by the supreme court of Michigan, upon this same proposition. The opinion in part reads:

"It is contended by complainant that it was not necessary to the protection of complainant's rights that the assignment of the lease be recorded; and that, the premises being in possession of lessees, and the leases in the custody of the complainant, it was the duty of the defendant Ella De May to make inquiry as to the terms of the lease, and as to the possession of the instruments, before purchasing, as the leases were the only evidence of the grantor's title to the rents reserved, and of his right to collect such rents from the tenants in possession; and that, in the absence of such inquiry, she [Mrs. De May] would be chargeable with notice of all the facts which she would have learned upon making the inquiry. We think that, while such possession of the lessees would be notice of their rights, it would not be notice that the title of De May had been incumbered by the assignment of the leases, reserving rent to himself."

To hold that a *bona fide* mortgagee for value without notice is chargeable with an unrecorded assignment of a lease, would be, in our opinion, to open wide the door for fraud in transactions of this kind. The assignee or owner of the lease should protect himself by having his lease acknowledged and recorded. When he fails to do this, his rights are always subject to that of a purchaser or mortgagee for value and without notice.

Reversed and decree here for appellant.

*Reversed.*