GAULT *v.* BRANTON.

No. 39276 November 8, 1954 75 So. 2d 439

*Wynn, Hafter, Lake & Tindall,* Greenville, for appellants.

*Kellner & Kellner,* Greenville, for appellee.

114

116

ETHRIDGE, J.

This is a suit for the specific performance of a contract for the sale of a plantation in Washington County, Mississippi, containing somewhat less than 784 acres of land. The buyers were the individual appellants, complainants below, Clyde V. Gault, Hugh G. Payne, William M. Reid, Jr., who later conveyed to appellant Whitehall Plantation, Inc. The seller was the appellee, defendant below, J. E. Branton. On September 6, 1946, the appellee entered into a written contract with appellants to sell them the plantation in question, known as the South Half of Burdette Plantation. The purchase price was $86,240.00, with a part payment in cash and the balance of $64,680.00 to be paid over a period of ten years, evidenced by ten promissory notes of $6,468.00 each, and secured by a deed of trust. That contract provided:

"Should the actual acreage of the property to be conveyed vary more than five acres from the 784 acres, there shall be an adjustment in the price proportioned on the average price per acre, that is to say that if the

variance is more than five acres either way, the adjustment shall be on the entire variance.''

This contract was consummated on October 15, 1946. On that date appellee executed and delivered to appellants a warranty deed conveying the lands, and appellants executed a deed of trust to secure the balance of the purchase price, together with promissory notes as stated. The notes were made payable on the first day of December of each year beginning with the year 1947.

On the day this transaction was closed, October 15, 1946, the parties also entered into a supplemental contract, which is the basis of this suit. This supplemental agreement recited that the parties had contracted to sell the land, describing it in part by metes and bounds, and in part by governmental subdivision; that it was agreed that if the acreage varied more than five acres from 784 acres there should be an adjustment in price per acre. It further recited that there was some doubt as to the correctness of the legal description of the land; that it could not ''be determined without a survey whether the acreage described is correct or not''; that the parties desired to have a survey made to determine the correct description and the quantity of land to be conveyed, and had agreed to have such a survey made by B. B. Carmichael, at the expense of grantees, appellants. The instrument further stated that the parties desired to close the sale in accordance with the terms of the original contract, but wished ''to reserve the rights of both parties to an adjustment in price in event of a variance either way of the acreage. conveyed.'' So it was agreed that the grantees would secure a survey of the property by Carmichael. The controlling paragraphs numbers 2 and 3 then provided:

''2.

''It is further agreed by the parties hereto that such survey will be binding upon both parties for the purposes of determining the correct description of the lands to be conveyed and the acreage included therein, and

that should there be a variance in the actual acreage owned by the Grantor of more than five acres from the 784 acres called for, there shall be an adjustment in the price proportioned on the average price per acre, namely, $110.00 per acre, that is to say, that if the variance is more than five acres either way, the adjustment shall be on the entire variance. It is further agreed that the description furnished by the said B. B. Carmichael, as a result of his survey, will be accepted by and binding upon both parties, and in the event the description so furnished by the said B. B. Carmichael should indicate that the description used in the deed and deed of trust executed this day is not correct, then both parties hereto agree and bind themselves to execute, respectively, correction deed and deed of trust and notes, said instruments to reflect the proper description and a reduction or increase in the purchase price and unpaid balance as the case may be. It is further agreed that should either party refuse or fail to execute the necessary correction deed or deed of trust, as the case might be, nevertheless the increase or decrease in the purchase price and unpaid balance shall be binding upon both parties, and such increase or decrease will be added to or taken from the amount of the first note securing the unpaid balance of the purchase price, just as though said correction deed, deed of trust and notes had been properly executed and delivered.

"3.

"It is agreed by the parties hereto, that in the event of the death or other disability of the said B. B. Carmichael to make the survey contemplated hereby, the Grantor shall have the right to name a surveyor to make such survey in the place and stead of the said B. B. Carmichael, and in the event of the refusal or failure within a reasonable time of the grantor to designate such surveyor, the grantees herein shall have the right to select such surveyor to make said survey."

And finally, in this supplemental contract the parties agreed that the correction deed, deed of trust and notes would contain the same provisions and obligations as those executed on October 15, 1946, "except to the extent the same must be modified to correct the description, the purchase price and unpaid balance."

Within six to eight weeks after the transaction was closed and the supplemental contract was executed on October 15, 1946, appellant Payne employed Carmichael to make the survey, and went out to the place with Carmichael to look at some of the corners. Carmichael told Payne that he would be back at a later date, that he could not give any promise of an exact date, because he was so busy he could not get there immediately, but that as soon as he could he would make the survey. Carmichael died on June 24, 1947. Before his death Payne had contacted Carmichael on two other occasions requesting that he make the survey as soon as possible.

Under paragraph 3 of the supplemental contract, Branton, upon Carmichael's death, had the first right to name a substitute surveyor, and in the event of Branton's refusal or failure within a reasonable time to do this, appellants had that right. Although Branton had agreed with appellants that a survey was necessary, he did nothing whatever about exercising his prior right to appoint a substitute surveyor. About a year and a half after Carmichael's death, in the early part of 1949, Payne had a converation with Branton and asked him whether he was going to have the survey made. Payne said that he knew that Branton had the prior right. Branton told Payne that he did not see any need for a survey, since the place had been surveyed by Archer in 1900, and he thought the old survey was sufficient. This was a complete change from his agreement in the supplemental contract that a new survey was necessary. Another year passed, and in 1950 Payne again

went to see Branton and asked him about the survey. Branton replied as he did in 1949, stating that he did not see any reason or need for a new survey.

In January 1951 appellants employed E. C. Wild, a qualified engineer, to make the survey. Wild testified that he was quite busy on other matters at the time, "being flooded with work," and that "Gault tried to push me up several times to make the survey"; that he began the field work in January 1952 and completed the field work on it on February 28, 1952. Soon afterwards Wild made a pencil copy of the survey, but did not make a final map or tracing until May 1953, which was about four months before this suit was filed. The accuracy and sufficiency of Wild's survey is not disputed in this record. Wild testified, but appellee offered no evidence whatever to impeach his survey. Wild's survey showed that there was a shortage of 23.09 acres, and based on that figure at the rate of $110.00 per acre, appellants were entitled under the supplemental contract to an adjustment in the purchase price in the amount of $2,539.90.

In explanation of his delay in not seeing Branton about the latter appointing a surveyor until about a year and a half after Carmichael's death, Payne said that he knew it was Branton's first right to appoint a substitute surveyor to do the job, that he gave him every opportunity to do it, and did not want to rush Branton. He said he went to Branton after he "figured he had time to make the appointment." He thought that Branton should have every opportunity to make it. After Wild completed his survey in February 1952, Payne went to see Branton about a fence line, and also told him that he had appointed Wild, who had made the survey, and had found the shortage. Branton then told Payne that he didn't see how there could be a shortage, because it was the same land which Archer had surveyed in 1900. Payne said that he "just figured there would be an adjustment made" under the supplemental

contract, but Branton refused to make any adjustment, either as to the description or the acreage.

Appellants paid the first note due on December 1, 1947, and apparently the notes due in 1948 through 1952, without any express reservation of their rights to an adjustment of purchase price. However, Payne testified that, although appellants knew they had an express right under the supplemental contract to deduct any shortage in acreage from the first note due December 1947, at that time the survey had not been made and they did not know whether a shortage existed; that the note was due at that time, and it was paid for that reason; that he had no reason to think that Branton would not abide by the contract.

On September 5, 1953, appellants brought this suit against appellee Branton in the Chancery Court of Washington County, setting up the contract, the shortage of acreage, and asking for a decree adjusting the purchase price and directing appellee to execute a correction deed. At the trial in October 1953 appellants offered as their first two witnesses, Payne and Wild. Holland O. Felts, an attorney of Greenville, testified that on February 24, 1953, appellants' attorneys wrote his client Branton, calling Branton's attention to Wild's survey reflecting the shortage in acreage and requesting an adjustment in price and correction deed. Another witness for appellants, A. O. Huddleston, testified concerning the boundary line between his land on the east and the land in question. Appellee offered no evidence. The chancellor found that Branton, by his refusal to designate a surveyor and his acceptance of payment of the first note, had voluntarily waived any rights he might have had under the contract to assert an increase in acreage, and that appellants waived their rights under the supplemental contract by paying without protest the note due December 1, 1947. The final decree dismissed appellants' bill.

■■ The appellee contends that appellants' suit is barred by the six year statute of limitations. Code of 1942, Sec. 722. The suit was filed on September 5, 1953, and on the date six years prior thereto, September 5, 1947, only 73 days had elapsed after Carmichael's death on June 24, 1947. A right of action accrues only when the right to institute or maintain a suit arises. ■■ Where a right of action depends on the happening of an event in the future, the cause of action accrues, and the statute of limitation begins to run only at the time when the event happens. Anderson v. Lancaster, 215 Miss. 179, 60 So. 2d 595 (1952). ■■ At the time appellee asserts the statute began to run, the facts concerning a correct description and the shortage of acreage had not been ascertained. No cause of action accrued in appellants before September 5, 1947, because the event on which the parties agreed an adjustment would be made had not occurred, namely, the ascertainment of the facts by a surveyor. The action could not have accrued then because appellee had a reasonable time to act after Carmichael's death, and then upon his refusal the contract contemplated that appellants would have a reasonable time to appoint a substitute surveyor, who in turn would have a reasonable time to complete a survey. ■■ Nor is there any merit in appellee's plea of laches, because mere delay short of the statutory period of limitations does not itself bar relief. Smith v. Smith, 211 Miss. 481, 504, 52 So. 2d 1 (1951); Waldrop v. Whittington, 213 Miss. 567, 573, 57 So. 2d 298 (1952). ■■ Furthermore, laches is more than mere delay. The doctrine is applicable only where there has been injury or prejudice to another, and Branton has not been prejudiced by the delay in adjustment. Dampier v. Polk, 214 Miss. 65, 79, 58 So. 2d 44 (1952).

The chancery court dismissed appellants' bill on the ground that they had waived their rights under the supplemental contract to name a surveyor, to claim an adjustment of price for a shortage in acreage and to ob-

tain a corrected description. Apparently the trial court thought that the binding effect of this waiver was established by its conclusion that appellee also had waived his rights to claim an increase of acreage when he accepted payment of the first note of December 1, 1947. But this premise assumes in favor of appellee the very issue in dispute, namely, whether the supplemental contract required a survey to be made before December 1, 1947, and an adjustment to be made only at that time, thereby making that date of the essence of the rights of both parties to the contract. We do not think that this interpretation of the supplemental agreement is in accord with its terms or the intent of the parties. The principal apparent purpose of the contract was to provide a procedure by which a survey would be made of the lands, a correct description obtained, and a determination of whether there was a shortage or an overage of acreage; and then there would be an adjustment of purchase price and the execution of a correction deed, notes and deed of trust.

The parties agreed that they did not know what was a correct description of the land and the correct amount of acreage therein. They agreed to have a survey made to determine the description and the quantity of land, and expressly reserved the rights of both parties to an adjustment in price. The parties agreed upon Carmichael as a surveyor, and further agreed in paragraph 3 that if Carmichael died appellee would have the first right to name a substitute surveyor. If he did not exercise that right within a reasonable time, appellants had the right to select a substitute surveyor. Under paragraph 2 the parties expressly agreed that a survey made under the contract would be "accepted by and binding upon both parties." In the event of a shortage of acreage and the need for a corrected description, as here, they further contracted to execute a correction deed, deed of trust and notes, and to make the adjustment in price.

Neither party to the contract was entitled to the adjustment of purchase price and correction instruments until a survey had been made and the facts ascertained. The position taken by appellee in his conversations with Payne, to the effect that a new survey was not needed and that Archer's 1900 survey was sufficient, was diametrically opposed to his agreement in the supplemental contract. It is undisputed on this record that appellee conveyed to appellants 23.09 acres less than they contracted to pay for, and under the clear terms of appellants' supplemental contract with appellee, they are entitled to an adjustment in the purchase price and to a correction in the description of the lands they purchased. All of the equities are on appellants' side.

There is no merit in appellee's contention that appellants have waived their rights to these adjustments. Payne testified that when he paid the note due December 1, 1947, he did it because he knew that the note was due, and he had no intention of waiving any rights which he had. He said that he knew that an adjustment could not be made until a survey was had and the shortage ascertained. The supplemental contract fixed no express time for completion of the survey. And we are not warranted in implying a time limit which would bar appellants, or in finding an implied waiver of the entire purpose of the supplemental contract, in the absence of a showing that appellee changed his position to his prejudice in reliance upon appellants' payment of the matured notes. Appellee has wholly failed to show that he has been prejudiced by the delay. Appellee, to support his position, relies primarily on the reference in the third sentence of the above quoted paragraph 2 of the supplemental contract to the effect that an increase or decrease "will be added to or taken from the amount of the first note . . ." However, a reading of that sentence shows that the right to deduct the adjustment from the first note was not intended to exist until a survey was made, a shortage of

acreage and a corrected description ascertained, and further until the appellee had thereafter refused to execute the necessary correction instruments. None of these conditions existed when the first note was paid. In fact, appellants had to pay that and other notes when due in order to preclude a right in appellee to foreclose on the deed of trust.

The trial court's finding of a waiver was in effect a finding that appellants were estopped by appellee's change of position to his prejudice, in that appellee had waived his rights to claim an increase in acreage by accepting payment of the first note. But under our interpretation of the terms of the contract, appellee had not waived any rights by accepting such payment.

A waiver is the intentional relinquishment of a known right. Appellants and appellee did not know the facts and did not know what their rights were until the survey was made. A waiver not supported by a valuable consideration would not suffice to estop appellants, and since appellee has not been prejudiced by the delay, appellants are not estopped to assert their rights under the contract. Campbell Paint & Varnish Co. v. Hall, 131 Miss. 671, 687-688, 95 So. 641 (1923).

In the absence of an express stipulation in the contract, or a clear indication of intent, in equity time is not ordinarily regarded as of the essence of a contract. 12 Am. Jur., Contracts, Sec. 308; Jones v. Loggins, 37 Miss. 546 (1859); Love Petroleum Co. v. Atlantic Producing Co., 169 Miss. 259, 270, 152 So. 829, 153 So. 389 (1933). In this case the parties failed to make time of the essence for the performance of the supplemental contract, and we would not be warranted in implying that they had that intent. Moreover, Wild's testimony establishing the correctness of the acreage and description was undisputed by appellee. And of course the purpose of having the survey made on the ground was to determine the true acreage and boundaries. Moreover, the survey was made in accord with the

supplemental contract, and in paragraph 2 the parties agreed that such survey would be "accepted by and binding" upon them.

 For these reasons appellants are entitled to the relief asked for in their bill of complaint. The decree of the chancery court is reversed and judgment is rendered here for appellants, adjudging a right in appellants to a reduction in the purchase price of $2,539.90, and directing appellee to execute to appellants the necessary correction deed, and directing appellants to execute a correction deed of trust and to correct the notes which have not matured and been paid in such manner as to effectuate the stated reduction in the purchase price.

Reversed and judgment rendered for appellants.

*McGehee, C. J.,* and *Roberds, Kyle* and *Gillespie, JJ.,* concur.

HOLMES, J., dissenting:

The majority opinion, it is stated with deference, misconceives the clear import of the supplemental agreement here involved. By the terms of that instrument, the parties agreed that the appellants would, at their expense, secure a survey of the land by B. B. Carmichael for the purpose of determining the correct description of the land and the acreage included therein; that such survey would be binding upon both parties, and that if it showed a variance of more than five acres from the 784 acres recited in the deed, there would be an adjustment in the purchase price calculated on the entire variance on the basis of $110.00 per acre; that if said survey showed that the description recited in the deed and deed of trust was incorrect, the parties would execute correction instruments to reflect the proper description and the reduction or increase in the purchase price as the case might be; that should either party refuse or fail to execute the necessary correction instru-

ments the increase or decrease in the purchase price would nevertheless be binding upon both parties and *would be added to or taken from the amount of the first note securing the unpaid balance of the purchase price;* that in the event of the death or disability of the said Carmichael to make the survey, the appellee would have the right to name a surveyor to make the survey in the place and stead of the said Carmichael; and in the event of his failure or refusal so to do within a reasonable time, the appellants would have the right to select such surveyor to make the survey.

It will be observed that the supplemental agreement imposed no *duty* upon either party to select a surveyor to make the survey upon the death or disability of Carmichael. *In fact, there is no provision in the agreement which required either party to select a surveyor to make the survey, or even to have a survey made, in the event of the death or disability of Carmichael.* The parties were merely given the option or right of election, the first right being accorded to the appellee, to name a surveyor to make the survey or to accept the description and acreage recited in the deed, provided that if either party exercised his option or election to have the survey made, any increase or decrease in the purchase price would be added to or taken from the amount of the first note. Thus it clearly appears from the agreement that the parties contemplated and intended that if either desired to exercise his option to name a surveyor and to have a survey made, the same should be done and the acreage ascertained by the due date of the first note.

Bearing in mind that in the event of the death or disability of Carmichael the supplemental agreement did not require either party to name another surveyor and have a survey made, but merely granted the option or right of election so to do, it becomes manifest from the facts of this case that the appellants elected not to exercise their option to name another surveyor and have

a survey made within the contemplation and intention of the parties, but on the contrary, elected to accept the description and acreage as recited in the deed.

The supplemental agreement was dated October 15, 1946. The deferred purchase price was evidenced by ten notes, each for the principal sum of $6,468.00, due one each year, beginning December 1, 1947. The appellants contacted Carmichael to make the survey within six or eight weeks after the date of the contract. Carmichael died from a heart ailment on June 24, 1947, before making the survey. After the happening of that event there was no obligation upon either party to name another surveyor to survey the land and no requirement in the contract that the land be surveyed. It was then entirely optional with the parties whether a survey would be made to determine the description and ascertain the acreage, or whether they would accept the description and acreage as recited in the deed. Between the date of Carmichael's death and the due date of the first note on December 1, 1947, a period of more than five months, neither the appellants nor the appellee attempted or signified any intention to exercise their respective options to have the land surveyed or to claim the benefit of any increase or decrease in the amount of the note first becoming due. On the due date of the first note, the appellants paid it without reservation of any kind, and necessarily well knowing that the contract provided that any variance of acreage as determined by a survey was to be applied to the first note. In like manner the appellants paid the note due December 1, 1948, without claiming the right to have the land surveyed and without reservations of any kind. In January or February, 1949, the appellant, Payne, had a conversation with the appellee, in which the appellee told him that he saw no need of a survey and clearly indicated that he had no intention of naming another surveyor to survey the land. Between that time and the due date of the third note on December 1, 1949, the appel-

lants took no steps to select a surveyor and have the land surveyed, and without reservations of any kind. In 1950, the appellant, Payne, had another conversation with the appellee in which the appellee told him that he saw no need for a survey and clearly indicated that he did not intend to name a surveyor to survey the land. With full knowledge of all of these facts, the appellants paid the note becoming due on December 1, 1950, without reservations of any kind. No steps were thereafter taken by the appellants to name a surveyor until 1951, when the appellants employed E. C. Wilde to survey the land. The Wilde survey was not made until February, 1952, and the map thereof was not filed until May, 1953. In the meantime, the appellants paid on their due dates the notes becoming due on December 1, 1951, and December 1, 1952, without reservations of any kind. In other words, throughout the period from June 24, 1947, the date of Carmichael's death, to December 1, 1950, the due date of the fourth note, embracing a period of more than four years, the appellants took no steps to exercise their option to name a surveyor to have the land surveyed, and paid all of the maturing notes without asserting the right to exercise such option and without reservations of any kind, although they had well known since January or February, 1949, that the appellee had declined to have the land surveyed.

As has been stated, after the death of Carmichael, there was no requirement in the contract that the land be surveyed. The parties were simply given the option or right of election to have the land surveyed or to accept the acreage and description as recited in the deed. Any variance in the acreage of more than five acres was to be adjusted by application to the first note becoming due December 1, 1947. In 67 C. J. S., page 511, the word "option" is defined as implying "a right to act or not as the optionee may choose," and as meaning "the right of choice; right of election to exer-

cise a privilege; power or right of election; right of choice between two things, courses, or propositions, and the choice of one excludes the choice of the other . . ."

Appellants necessarily knew that by the terms of the contract they had merely the option or right of election to have the land surveyed upon failure of the appellee to do so, or to accept the description and acreage as recited in the deed. By the payment of the notes without reservation and without reference to a survey, they must be held to have elected not to name a surveyor, but to accept the acreage and description as recited in the deed. Their choice of the one course excluded the other. To hold otherwise would be to say that the appellants would not be held to have elected to accept the acreage and description recited in the deed, even though, without claiming the right to have the land surveyed and without reservations of any kind, they had paid every note, including the last, throughout a period of ten years, during which property lines might be changed by encroachments and rights of adverse possession accrue. Certainly such a result was not in the contemplation of the parties, nor is it justified under the express or implied terms of the agreement.

The authorities relied upon by the majority to the effect that there must be a new consideration to support a waiver in the absence of the elements of estoppel, and that there can be no estoppel in the absence of a showing of prejudice to the opposite party, have no application in my opinion to the case before us. It is not questioned, and cannot be questioned, that the supplemental agreement which was a part of the contract of sale was a valid contract and supported by a consideration. The rights of the parties here are measured by that agreement. Under the terms of the agreement, it was not obligatory upon either party to have the land surveyed after the death of Carmichael. This might have been done at the option of the parties. The agreement itself conferred upon the parties the right

to waive that option and elect to accept the acreage and description as recited in the deed. This right was conferred upon the parties by the terms of their solemn agreement, whether such waiver by either party resulted in prejudice to the other party or not. As I view the case, it is controlled by the agreement which, after the death of Carmichael, did not require either party to have the land surveyed, but merely conferred upon the parties the right to do so, which right was subject to waiver and to the right of election to accept the acreage and description as recited in the deed. It seems to me that the facts in this case clearly show that the appellants by their acts and conduct elected not to exercise their option to have the land surveyed, but on the contrary, elected to pay the notes and accept the acreage and description as recited in the deed. It is therefore my opinion that the result reached by the chancellor was correct, and that the decree of the court below would be affirmed.

I accordingly respectfully dissent from the majority opinion.

I am authorized to say that Justices Hall, Lee and Arrington concur in this dissent.