¶ 1. In this case, the Court is called upon to resolve the respective rights of the parties to a land sale contract that, on its face, is quite simple and straightforward. Nevertheless, subsequent events have given rise to sharply contrasting views among the parties as to their respective rights and obligations under the agreement. The principal issue in dispute relates to the timeliness (or untimeliness) with which post-contract events have transpired that had, as of the date this litigation commenced, prevented completion of the contract of sale. The chancellor, in the exercise of his discretionary equitable powers, determined that an additional, albeit brief, time to complete the contract was in order and entered a judgment accordingly. Finding ourselves unable to conclude that the chancellor's resolution of the matter constituted a manifest abuse of discretion, we affirm the judgment.
 I. Facts
¶ 2. On May 23, 1994, Ervin Lee and his wife, Marlene B. Lee, contracted in writing to sell approximately thirty-four acres in Pearl River County to Dawn Schneider. The contract provided for a total price of $42,500. Schneider agreed to, and, in fact, did deliver to the Schneiders the sum of $10,000 in earnest money, which was to be credited toward the purchase price at closing under the terms of the contract. The remaining balance was to be paid under an owner-financing arrangement whereby Schneider would pay monthly installments of $700 to be applied first to accrued interest at the rate of ten per cent and the balance to reduction of the principal *Page 313 
balance, with the installments to continue until the deferred purchase price was paid in full.
¶ 3. The contract provided, among other things, that "[i]n the event that the title is not merchantable, and cannot be cured expeditiously by seller, the seller is to return the $10,000 to purchaser." A later provision said that the "sale [was] to be closed on or before June 30, 1994."
¶ 4. Prior to the closing date, it was discovered that there were certain problems with the title to the property that involved possible overlaps in the legal description of the property and that of an adjoining tract. An attorney was engaged to attempt to resolve these discrepancies and it was ultimately determined that the curative work would necessarily involve an exchange of quitclaim deeds between the owners of the Lee property and the adjoining property.
¶ 5. That process did not go smoothly. Among other problems, there was substantial difficulty in determining all of the owners of the adjoining land who would need to be signatories to the quitclaim instruments because ownership had to be traced through multiple estate proceedings and involved complicated heirship determinations. The attorney retained to do the curative work testified that he had pursued the matter with reasonable diligence but simply ran into repeated roadblocks that delayed the final exchange of quitclaim deeds. Finally, in late 1997, the attorney concluded an agreement with the adjoining owners involving the necessary exchange of deeds. The exchange, in the attorney's view, would have rendered the title to the thirty-four acre Lee tract merchantable. He was so certain of the success of his efforts that he advised the parties that they could, at last, proceed to schedule a closing date.
¶ 6. The evidence showed that Schneider, in addition to making the $10,000 earnest money payment to the Lees, had made the first installment payment of $700 sometime in the summer of 1994, but had suspended any further payments under the contract until the title problems could be resolved. It is undisputed that the Lees retained the earnest money deposit and the $700 installment until December 10, 1997 — a time after the attorney had determined that the end of the title problems appeared to be in sight. On that date, the Lees tendered the entire sum of $10,700 in the form of a cashier's check back to Schneider under cover of a letter declaring their view that the contract was null and void because it had not closed on the scheduled date of June 30, 1994.
¶ 7. Schneider did not negotiate the check. Rather, she commenced this proceeding in the Chancery Court of Pearl River County seeking specific performance of the contract, i.e., a judgment compelling the Lees to convey the property to her according to the original terms of the contract.
¶ 8. The chancellor determined that the contract, on its face, did not declare time to be of the essence insofar as the scheduled closing date was concerned. Having so determined, he next considered the provision requiring any curative work to be expeditiously completed and concluded that the work had proceeded in that fashion despite the unusually long period of time it had taken (and was continuing to take) to resolve the title difficulties. The chancellor further noted that the Lees, by their act of retaining the $10,700 for the entire period while the extensive efforts to resolve the title problems were continuing, demonstrated their acquiescence in the process, lengthy though it had proved to be.
¶ 9. The chancellor therefore ordered that, if the title defects could be reasonably *Page 314 
resolved so as to make the title merchantable within thirty days from the date of judgment, the Lees would be compelled to complete the contract according to its terms. It is from that judgment that the Lees have perfected this appeal.
 II. Discussion
¶ 10. Unless the contract expressly so states, or unless there is otherwise shown to be a clear indication of intent, time is not ordinarily considered to be of the essence in the performance of a contract. Gault v. Branton, 222 Miss. 111, 125, 75 So.2d 439, 445 (1954). In this case, there is no evidence that the Lees viewed the tentative closing date of June 30, 1994, as critical to their obligation to sell. In fact, their continued act of holding the earnest money and first payment for such an extended time while voicing no dissatisfaction with the fact that curative action was continuing strongly suggests that they did not consider time to be of the essence.
¶ 11. It cannot be disputed that, in this case, the time required to cure the title defects ran on for an unusually lengthy period of time, and it certainly is true that the parties could not be locked into the terms of the contract against their will in perpetuity so long as there remained some hope that the title problems could ultimately be cured. However, in the circumstances of this case, there was ample evidence that both parties were satisfied to permit the attempts at curative work to continue apace and that the Lees' decision to finally attempt to rescind the contract came, not when it became apparent that the problems could not be resolved, but rather at a time when it seemed reasonably assured that, at long last, success was at hand.
¶ 12. We find that the chancellor's decision properly addressed two relevant concerns regarding the propriety of enforcing the contract according to its terms. First of all, the decision did not permit the Lees to abruptly and without warning terminate the contract after a course of conduct extending over several years that clearly indicated their intention to remain bound by the contract — as evidenced principally by their continued retention of the rather sizeable earnest money deposit and first monthly installment. Secondly, the decision implicitly recognized the fact that the matter ought to be resolved one way or the other, rather than continue to linger unresolved in light of the Lees' new-found, but entirely reasonable, desire to bring the matter to a speedy conclusion. In furtherance of that goal, the chancellor placed a final thirty-day time limit on the efforts to resolve the title problems, after which the Lees would be permitted to rescind the contract if, for some reason, the anticipated resolution of the title difficulties did not materialize.
¶ 13. Concepts invoked by such words as "expeditiously" and "reasonable time" are impossible to quantify with any great precision. Nevertheless, in interpreting and enforcing the provisions of contracts of this nature, those sorts of concerns necessarily must be given some meaning by the chancellor. It logically follows that, in interpreting and enforcing competing rights and obligations arising under such imprecise concepts, the chancellor is afforded wide discretion in formulating a remedy that is equitable under the circumstances. Burch v. LandPartners, L.P., 784 So.2d 925, 928 (¶ 12) (Miss. 2001). We find that the chancellor's decision is this case was an entirely fair, reasonable and equitable means of bringing this long-lingering contractual arrangement to a final conclusion.
¶ 14. Because, of necessity, the question of the commencement of the thirty days for corrective action has been held in abeyance *Page 315 
pending this appeal, we construe the chancellor's judgment to hold that the thirty days to complete final curative action should commence at such time as the mandate issued by this Court becomes final.
¶ 15. There is, additionally, the somewhat subjective issue of whether the curative work, once accomplished, will, in fact, render the title merchantable. In this case, this potential conflict has taken a somewhat unusual turn in that Schneider professes her willingness to accept the title once the presently-proposed curative work takes place, while the Lees contend that they remain concerned regarding the merchantability of their own title and fear exposure to a subsequent breach of warranty claim should they be forced to execute the proposed warranty deed in its present form. Should there exist, on remand, legitimate questions concerning the merchantability of the Lees' title if and when the suggested curative work is accomplished, it would seem entirely appropriate for the chancellor to resolve such concerns at a subsequent hearing. If necessary, the chancellor could permit the Lees to insert appropriate disclaimers of warranty into the deed for matters determined by the chancellor to actually affect the merchantability of title, but which Schneider remains willing to accept in order to obtain title to the property.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P. JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS,CHANDLER AND BRANTLEY, JJ., CONCUR.