Carsek Corp., Appellant, *v.* Stephen Schifter, Inc.

Argued April 26, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Herbert M. Linsenberg*, with him *Robert J. Klein*,
and *Meltzer & Schiffrin*, for appellant.

*Roger B. Reynolds*, with him *Russell J. Brownback*,
for appellee.

Opinion by Mr. Justice O'Brien, October 3, 1968:

This is an appeal from the final decree of the Court of Common Pleas of Montgomery County, dismissing the complaint in equity of appellant Carsek Corporation. Appellant had sought reformation of a deed and purchase-money mortgage, or payment to it of some $49,000, or other appropriate relief.

On May 11, 1964, James C. Scully entered into a contract to purchase a 57 acre tract of land in Upper Gwynedd Township, Montgomery County, from the appellee, Stephen Schifter, Inc. (hereinafter Schifter) for the purpose of constructing a housing development thereon. Later Carsek, Inc. (hereinafter Carsek) was incorporated with Scully as its president and Carsek was recognized as Scully's nominee by appellee. The price agreed upon was $200,000—$25,000 in cash on or before settlement and the balance of $175,000 to be paid in four years time, secured by a purchase-money mortgage. However the Agreement of Sale had one very unusual feature bearing on the purchase price. This was the "upset" provision in Paragraph Seven: "Prior to settlement hereunder, Buyer will have prepared by the Registered Engineer who has prepared the plan of subdivision described hereinabove,[1] a list of 'quantities'. The 'quantities' shall set forth all costs for all street improvements necessary to fully improve all ninety lots as the plan will show. This list of 'quantities' will include street-grading, curb, water lines, (and all water company requirements such as fire hydrants, etc., if paid by developer), sidewalks,

---

[1] Paragraph Two provides in part:

"It is understood that Buyer will promptly after the execution by all parties of this Agreement of Sale, order from a registered professional engineer, a plan of subdivision of this tract, which plan will conform in every way to the zoning requirements of Upper Gwynedd Township, as above described." (Footnote added)

street paving, sanitary sewer lines, sanitary laterals, manholes, storm sewer pipes, culverts, storm sewer man-holes, to consider each lot (including those facing Hancock Road and North Wales Road) fully improved. If these 'quantities' exceed $160,000, Seller will absorb the amount over $160,000, by deducting the overage amount from the consideration being paid by Buyer for the land at settlement. Except that Seller may contest the 'quantities' and the amounts in dollars by providing bid(s) from reliable contractor(s) for the item(s) of the work required, and if it (they) are less than the engineer(s) estimate(s), Buyer will agree to accept this lower price or prices."

Pursuant to an addendum to the agreement, two double sized lots were conveyed by Schifter to Carsek, on September 11, 1964, for $20,000 to enable Carsek to build sample homes thereon, leaving an unpaid balance of $180,000 under the original agreement.

Meanwhile, shortly after execution of the agreement of sale, Carsek engaged Bernard V. Pannone, a registered professional engineer, to develop a subdivision plan of the tract. Several plans were prepared and submitted to Upper Gwynedd Township authorities and a plan dated July 27, 1964, containing 90 lots and known as Rexdale, was approved. Pannone calculated the "quantities" of the street improvement required to develop the entire tract in accordance with the plan dated July 27, 1964, and gave those calculations to Carsek's representative during the summer of 1964. From those calculations Carsek's representative, Walter Hewchuck, prepared tabulations of the estimated improvement costs for the Rexdale subdivision. The complete estimates for the cost of improving Section One of the development were given to appellee's agent, E. Thomas Flood, II, on December 1, 1964. On that date, settlement, set in the Agreement of Sale to occur

no later than December 11, 1964, was postponed until January 11, 1965. A complete tabulation of the total estimated improvement costs for the entire subdivision, totalling $217,230.00, was not submitted to appellee or its agent until some forty-five days after settlement.

The settlement took place on January 11, 1965. Attending were several representatives of Carsek, Flood representing Schifter, and representatives of the title insurance company. The Chancellor found that Scully mentioned to Flood that credit for improvements would be expected and Flood replied that there would not be any problem about it. Carsek paid $5,000 in cash at settlement, and gave a purchase-money mortgage and note for $175,000, receiving in return a deed reciting a $180,000 consideration.

About forty-five days after settlement Carsek requested credit for the projected cost of street improvements above $160,000, but Schifter refused to consider any credit since settlement had already passed. Subsequently formal demand for $49,161.00 was made by Carsek and refused by Schifter.

Appellant then brought suit in equity requesting that the deed and purchase-money mortgage be reformed to reflect the adjusted consideration agreed upon by the parties. The Chancellor held that Paragraph Seven of the agreement of sale required that the cost estimates be submitted prior to settlement, and that, having failed to submit the estimates prior to settlement, plaintiff was not entitled to any relief. We disagree.

In the first place, we cannot agree with the Chancellor that time was of the essence of this contract. "It is a well-established general principle in equity that time is not ordinarily regarded as of the essence in contracts for the sale of real property unless it is so stipulated by the express terms thereof, or it is nec-

essarily to be so implied." 55 Am. Jur., Vendor & Purchaser, Sec. 110; *Knable v. Bradley,* 430 Pa. 153, 242 A. 2d 224 (1968); *Cochrane v. Szpakowski,* 355 Pa. 357, 49 A. 2d 692 (1946). Here there exists neither the express stipulation nor the necessary implication. Appellee urges that the express stipulation is present by virtue of this clause in the agreement: "Settlement to take place within thirty days of the obtaining by the Buyer to Buyer's satisfaction of the clearances above referred to, *but in no case shall the time for settlement be longer than seven months from the date of approval of this Agreement of Sale . . ."* (Emphasis added). However, the italicized language does no more than provide that settlement is to take place on or before December 11, 1964, and that phraseology has been held not to make time of the essence. *Cochrane v. Szpakowski,* supra; *Morrell v. Broadbent,* 291 Pa. 503, 140 Atl. 500 (1928). When it is so easy to insert the commonly-used phrase "time to be of the essence" when that is the desired result, we are loath to ascribe that result to any other language.

Nor do the circumstances necessarily imply that time is of the essence. On the contrary, they provide a strong indication that time was not to be of the essence. One of those circumstances is the type of performance required. Appellee relies heavily on the language of the agreement providing that the credit for the estimates above $160,000 should be deducted from the consideration being paid by buyer at settlement as indicating that time must be of the essence. Although we have found no Pennsylvania cases directly in point, at least one jurisdiction has decided this precise issue and held that a requirement that a credit be given against a designated payment does not make time of the essence. In *Gault v. Branton,* 222 Miss. 111, 75 So. 2d 439 (1954), a suit involving interpretation of

a contract for the sale of land, the purchaser sought a reduction of the purchase price in accordance with the terms of the agreement. The agreement provided that there would be an adjustment made in the purchase price of the actual acreage, as determined by final survey, differed from the estimate recited in the agreement of sale. At settlement, October 15, 1946, the parties had not yet determined the exact acreage. They entered into a supplemental agreement which provided that the grantee (plaintiff) would secure a survey and that there would be a corresponding adjustment made which "will be added to or taken from the amount of the first note securing the unpaid balance of the purchase price".

The first note was due more than a year later, on December 1, 1947. The plaintiff paid the note when due, in full, and without protest, since he did not yet have the survey. He also paid, in full, the notes due in the years 1948 through 1952. He finally brought suit in 1953, seeking a reduction of the purchase price on the basis of a survey which established that the acreage was less than that specified in the agreement of sale. The Court granted the reduction, stating: "In the absence of an express stipulation in the contract, or a clear indication of intent, in equity time is not ordinarily regarded as of the essence of a contract. . . . In this case the parties failed to make time of the essence for the performance of the supplemental contract, and we would not be warranted in implying that they had that intent." 222 Miss. at 125. The due date of the first note in *Gault* is like the settlement date in the instant case. The *Gault* court did not require the credit prior to the due date of the first note, even though the supplementary agreement provided that the adjustment would be "added to or taken from the amount of the first note." Nor should we create

a forfeiture by holding time to be of the essence merely because the credit was to be subtracted from the purchase price.

Particularly is this so when other features of the performance required would indicate that time was not to be of the essence. Appellant had to secure approval of a plan by the Township, get various clearances from sewer and water authorities, and then have prepared estimates of improvement costs. With all the uncertainties inherent in gaining governmental approval, it would be unreasonable that time should be of the essence. See *Cochrane v. Szpakowski*, supra.

Furthermore, appellant's delay really resulted in no harm to appellee. The Chancellor stated that time was of the essence "because, otherwise, final settlement would have been held and defendant still would have been uncertain as to the net consideration it would ultimately receive for its property." Yet this hardly constitutes harm cognizable by a court of equity. Neither party had the right to rescind the contract regardless of what the estimates totalled. When appellee made the agreement, it left itself open to an uncertain purchase price. A month or two more of uncertainty is scarcely the harm required in order that it be inferred that time is necessarily of the essence. Moreover, the delay resulted in no loss whatsoever of cash in hand, since appellee took a four-year purchase-money mortgage. As for the right to submit counter-estimates, appellee had ample opportunity to do that when appellant submitted its estimates, but absolutely refused to do so, preferring to rely on its view that appellant's action came too late. Any harm resulting from failure to submit counter-estimates was self-imposed.[2]

---

[2] In any event, it is very doubtful that there was any harm from failure to submit counter-estimates. It was to the best in-

Whereas appellee suffered virtually no harm from a slightly delayed performance, it would work a tremendous forfeiture to deny appellant the relief sought. This Court has always sought to avoid forfeitures, and has interpreted contracts in such a way as to effectuate that purpose. Cf. *Knable v. Bradley,* supra; *Reilly v. City Deposit Bank,* 322 Pa. 577, 185 Atl. 620 (1936). Particularly is this so where there has been part performance. The Restatement, Contracts, §276, provides in part, as follows: "In determining the materiality of delay in performance, the following rules are applicable: . . . (c) If delay of one party in rendering a promised performance occurs before any part of his promise has been rendered, less delay discharges the duty of the other party than where there has been part performance of that promise." Here, appellant clearly performed part of its obligation under Paragraph Seven by submitting the cost estimates for Section One. To hold that it forfeited some $45,000 by submitting the remainder approximately forty-five days late would be unconscionable. Time was not stated to be of the essence of this contract, and the circumstances afford absolutely no basis for considering a forty-five day breach to be so material as to discharge appellee from any duty under Paragraph Seven.

Nor is appellant's contract right to a credit against the purchase price extinguished by virtue of the fact that settlement was completed. Appellee urges that the agreement of sale merges into the deed, and that therefore no recovery can be predicated upon the earlier agreement. While appellee states the general rule, that rule is subject to certain exceptions under the umbrella of which the instant situation falls. Merger is said to be the rule, except when the intention of

terest of appellant, which could hardly be sure of winning this lawsuit, to keep the actual costs as low as possible.

the parties is otherwise, or where the stipulations in the contract sought to be enforced are collateral to the functions performed by the deed. Anno: *Merger of Contract in Deed,* 38 A.L.R. 2d 1310, 1313 (1954). Actually, the latter exception is subsumed in the former, since the fact that the stipulations are collateral to the functions of the deed gives rise to the inference that the parties did not intend that the stipulations merge into the deed. Surely the obligation placed upon the vendor in the instant case can be said to be collateral to the main function of the deed. "A covenant has been said to be collateral, and therefore one which survives delivery of the deed, if it bears no relation to title, possession, quantity or emblements of the transferred property." Friedman, Contracts and Conveyances of Real Property, 411-12 (1963). Clauses in the contract dealing with consideration fit within this category.

Most of the cases dealing with contractual provisions providing for adjustments in consideration have concerned the vendee's obligation. The Pennsylvania cases are in this category. For instance, in *Wilson v. Pearl,* 12 Pa. Superior Ct. 66 (1899), the plaintiff had sold certain property to the defendant by deed reciting a consideration of $2,800. Plaintiff had accepted $500 in cash and a mortgage for the balance of $2,300. At trial, however, he introduced the contract of sale to establish that the parties had agreed upon a price of $5,000 for the land. The $2,800 figure reflected the defendant's election to take title subject to a charge of $2,200. Plaintiff then showed that he had been mistaken at settlement as to the amount of the charge, which was in fact only $2,000. The Court held that the purchaser was legally bound by his original promise and was obligated to pay the additional sum of $200 in cash to the seller: "The rule that a contract

for the sale of land is superseded by or merged in the deed of conveyance, has no application in such a case. See Close v. Zell, 141 Pa. 390; Lehman v. Paxton, 7 Pa. Superior Ct. 259, and cases there cited. The obligation of the contract of a purchaser of land to pay a stipulated sum survives the delivery of the deed of conveyance, unless he has discharged it by compliance with the terms of the contract or has been released from it, and the fact that he has paid the consideration mentioned in the deed is not conclusive of that question. That it is competent to prove by parol a money consideration greater than that mentioned in a deed, or a consideration not mentioned, if it be not directly inconsistent with that expressed, is too well settled to require the citation of authorities."

Similarly, Judge ERVIN, later President Judge of the Superior Court, in *Douglass v. Laughlin*, 41 Del. Co. 96 (1953), refused to find that the parties' initial agreement as to consideration had been superseded by a formal recital in the deed of conveyance. The agreement of sale provided for a purchase price of $2,500 for the land. It further provided that if the buyer did not, within six months after settlement, award the seller a contract to construct a house on the land, the seller would be entitled to an additional payment of $1,500. Settlement was completed; the buyer paid the full consideration of $2,500 and the seller delivered the deed. Six months passed and the seller received no construction contract. He then brought suit for the additional $1,500. The Court found for the seller, stating: "A deed is a mere transfer of the title, a delivery so to speak of the subject matter of the contract. It is the act of but one of the parties, made pursuant to a previous contract either in parol or in writing. It is not to be supposed that the whole contract between the parties is incorporated in the deed

made by the grantor in pursuance of, or as the consummation of, a contract for the sale of land. There are many things pertaining to the contract which it is manifest are never inserted in a deed. The instrument of conveyance may be complete for its purpose, which is to declare and prove the fact of conveyance; yet very naturally and commonly it is but a part execution of a prior contract, and parol evidence is admissible to show the true consideration for which it was given and all other parts of the transaction, not inconsistent with the recitals in the deed, provided the fact of conveyance is not affected by it." At 100-101.

While, as stated above, these cases imposed an additional obligation upon the vendee, we see no reason why the same principle should not apply to an adjustment imposed upon the vendor. In a case almost on all fours with the instant case, the New Jersey Superior Court held there was no merger. In *Tunkel v. Filippone*, 4 N.J. Super. 107, 66 A. 2d 339 (1949), the contract of sale provided that the seller would allow a credit against the purchase price for certain assessments levied against the property. Because the amount of the assessment in question had not been fixed at the time of settlement, no credit was allowed at that time. As in the instant case, the purchaser in good faith accepted a deed which made no mention whatever of his right to the credit. Holding that the seller was bound to pay over the amount of the assessment, the Court stated: "The defendants' undertaking to pay assessments for any improvements that had been completed before the contract was signed, did not merge and become extinct upon delivery of the deed." 66 A. 2d at 341.

Thus, in accordance with the agreement of sale, appellant is entitled to receive credit for improvement costs over $160,000. Inasmuch as the actual costs have

proven to be slightly lower than the estimates, appellant should recover only those actual costs plus any estimated costs yet remaining.

The decree is reversed and remanded for proceedings consistent with this opinion, costs to be borne by appellee.

Mr. Chief Justice BELL and Mr. Justice ROBERTS concur in the result.