## Hrivnak v. Myers (No. 2)

*John B. McCue*, for plaintiffs.
*Leo Kostman*, for defendants.

HOUSE, *P.J.*, April 10, 1980—

## DISCUSSION

Plaintiffs bring this action for specific performance of a land sale contract. The facts concerning the transactions surrounding the sale are somewhat complex and are laid out below in chronological order. Generally the parties agree as to the facts.

By virtue of an agreement of sale dated January 9, 1970, defendants Myers acquired equitable title to the land in question from the prior owners, the Goodmans. Sometime thereafter they apparently moved into the dwelling house located on the premises. On April 29, 1978 defendants entered into an agreement with Holloway Realtors authorizing Holloway to list and sell the property in question for $15,900. Plaintiffs responded to an advertisement concerning the land in a local newspaper and on May 5, 1978, plaintiffs signed the agreement of sale in the presence of an agent or agents of Holloway Realtors. At the same time, plaintiffs made a down payment of $500 by check payable to Holloway Realtors.

On May 6 defendants signed the agreement which provided, among other things, the con-

tingency that the buyers obtain mortgage financing in the amount of $12,700 at eight and three-quarters percent interest for 20 years by May 15. Additionally, the agreement provided for completion of the sale on or before June 5, 1978. On the same May 6 plaintiffs made an application for a mortgage with the Peoples Federal Savings and Loan.

On May 9 defendants notified Holloway Realtors that they had decided not to sell the house. Holloway, through its agent Geraldine Holloway, immediately contacted the Hrivnaks who reaffirmed their intention to purchase the property. On the same day, defendant James Myers telephoned plaintiff Paul Hrivnak and apparently attempted to convince him not to purchase the home. Several minutes after this conversation ended, Paul Hrivnak telephoned James Myers and informed him he still wanted to purchase the property. The next day plaintiffs acquired legal counsel to represent them.

Over the next several days, Geraldine Holloway was in contact with Peoples Federal concerning the Hrivnaks' mortgage application and determined that the loan had been tentatively approved by the loan committee and was awaiting formal approval by the board of directors at its next meeting. On May 15 Mrs. Holloway contacted the bank and was told that no problems were expected and that the Hrivnaks would definitely get a mortgage approval, but that no board meeting date had been set. This information was communicated by Mrs. Holloway to Mrs. Myers the same day.

On May 16 the Myers sent a letter to the Hrivnaks canceling the sales agreement for the failure of the Hrivnaks to obtain a mortgage according to the contract's provisions. On May 19 Peoples Federal notified the Hrivnaks that their mortgage had been

approved. The June 5 deadline passed with the Hrivnaks demanding the sale go on and the Myers refusing. This action was instituted by praecipe for summons in equity prior to this on May 11, 1978 and a complaint was filed on August 16, 1978. A deed dated January 9, 1979, conveying full title to the property from the Goodmans to the Myers was recorded on January 16, 1979.

Throughout the course of this litigation defendants have asserted three defenses to this action. First they assert that plaintiffs knew at the time the contract was signed that the Myers did not have full legal title and that therefore no complete sale was contemplated nor legally possible. Defendants' second contention is that when plaintiffs failed to secure a mortgage commitment by the date set by the contract, the contract could have been and was canceled by defendants. The third assertion is that no cause of action was stated in the complaint since the allegation of tender was not specific enough. In defendants' brief in support of their requested findings of fact and conclusions of law, defendants have added a fourth argument, that plaintiffs failed to show that they had taken out fire insurance on the house as required by the contract, thus breaching the contract themselves and relieving defendants from any duty of performance.

## ISSUE I

May a purchaser specifically enforce a contract for the sale of land, where the purchaser knew at the time of the making of the sales agreement that the vendor held only the equitable title and that the legal title rested in a prior vendor of the land by virtue of an executory land sale contract?

Defendants herein contend that plaintiffs knew or should have known at the time the contract was made that defendants held only the equitable title to the property, since it was a matter of record. Plaintiffs do not deny this knowledge. The contested issue concerns the legal effect of this. Defendants argue that this renders the contract void ab initio; plaintiffs argue that it has no legal effect on the enforceability of the sales contract between them and the defendants.

No specific cases have been cited by either party in support of their respective positions and none has been found by this court. Nonetheless, the well-established law concerning sales of realty and the relationship of vendors and purchasers strongly supports the position of plaintiffs.

Williston on Contracts, in discussing the effect of a contract for the sale of land by a vendor who is at the same time a purchaser of the same land under a prior, executory contract, says: "A purchaser who makes a subcontract, however, binds himself to transfer a good title." 7 Williston on Contracts, §927A (3d ed.).

Corpus Juris Secundum holds likewise that a "purchaser under an executory contract for the sale of land may sell his interest to a subpurchaser when the purchaser is so situated with respect to the land that he can acquire the legal title thereto either by the voluntary act of the title holder or by action in court." 92 C.J.S., Vendor & Purchaser §314(a) (citing cases).

Naturally, with the right to sell comes the duty of having to convey once a sales contract is entered into. American Jurisprudence, in noting that a purchaser is not required to accept only an equitable title where his vendor held himself out as the com-

plete titleholder, also says "the rule that an equitable title is not marketable does not, however, prevent the purchaser, at his election, from securing a decree for specific performance against the vendor, if the latter, having the full equitable title, can control the legal title outstanding in a naked trustee." 77 Am. Jur. 2d, Vendor and Purchaser §176.

That this is correct is obvious from an analysis of the rights held by a purchaser under an executory land sales contract (here, the defendants):

"When a contract is made for the sale of land, the purchaser is regarded in equity as the owner, and the contract vests in him an equitable title to the land. . . .

"The estate of a purchaser under an agreement of sale is a 'freehold,' absolute in possession, . . . which may be aliened. . . . Thus, the purchaser may do with the land as though he had legal title, subject only to the paramount right of the vendor to force payment of the purchase price." 32 P.L.E., Sales of Realty §62.

It has long been the rule in Pennsylvania that courts of equity regard a purchaser under a land sale contract as the complete owner of the land with full rights and liabilities.

"So much is the vendee considered, in contemplation of equity, as actually seised of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance; and he will be entitled to any benefit which may accrue to it in the interval; because by the contract, he is the owner of the premises, to every intent and purpose in equity." Richter v. Selin, 8 S. & R. 425, 440 (1822). See also, Spratt v. Greenfield, 279 Pa. 437, 124 Atl. 126 (1924).

When a purchaser under an executory contract enters into another contract to sell what he has acquired, namely the equitable title, the subpurchaser acquires the same rights as his vendor. Thus, the subpurchaser acquires equitable title with the right to demand performance from his vendor at such time as his vendor acquires legal title, subject to the right of his vendor to the purchase price. "On the same principle that an ordinary contract of sale converts the owner of land into a trustee for the purchaser, . . . a subsale converts the purchaser into a trustee for the subpurchaser." 92 C.J.S., Vendor & Purchaser §314(c)(3). See also, Lycoming Natural Gas Corp. v. Searle, 20 D. & C. 33 (1933).

Applied here, these rules of law establish that defendants had the full right to sell the land and, having done so, may be required by their vendees, plaintiffs, to specifically perform the contract. Likewise, when the vendor subsequently acquires full legal title, as defendants have here, he "will be deemed a trustee by construction of law, and will be required to convey it to the purchaser." 32 P.L.E., Sales of Realty §54. See also, Clark v. Martin, 49 Pa. 299 (1865).

Thus we conclude herein that plaintiffs do have a right of specific performance from defendants who at the time of the making of the agreement of sale held only the equitable title to the property under a previous agreement of sale.

Defendants have also argued on this issue that since plaintiffs knew defendants did not have legal title, then both parties knew the contract was "impossible of performance" and thus it was never intended that the sale actually go through. There was no evidence introduced to support this and plain-

tiffs appeared at all times to have intended that the contractual duties be performed. Likewise, the actions of defendants in listing their property for sale, in signing the contract and in acknowledging receipt of the $500 down payment, exhibited an intent to sell their property.

## ISSUE II

Does the contract requirement that plaintiffs secure a mortgage commitment within ten days of the contract signing make time of the essence of the contract such that its violation would entitle defendants to declare the sale void?

Defendants have, throughout the course of this litigation, argued strenuously that the contract provision calling for the acquisition of a mortgage by plaintiffs by May 15 was of the essence of the contract, and when no such commitment was forth-coming on that date, the contract was voidable at the option of defendants. Defendants further argue that courts do not have the power to rewrite contracts and must apply them strictly as written.

The applicable provision of the agreement of sale provides:

This sale and settlement hereunder are NOT conditional or contingent in any manner upon the sale or settlement of any other real estate NOR subject to any mortgaging or financing except as hereinafter provided.

(a) Term and amount of mortgage loan required by Buyer: 20 years $12,700.00

(b) Interest rate and type mortgage required by Buyer: Interest 8¾%, Type *Conventional* however, Buyer agrees to accept the maximum permissible interest rate committed by the mortgage lender.

(c) Commitment date for approval of the mortgage: *May 15, 1978.*

(d) Maximum mortgage placement fee, if any, to be paid by Seller: $_____.

(e) Minimum amount of appraisal required if FHA financing (exclusive of closing costs) $_____.

(f) Mortgage loan application shall be made through the office of: *Holloway Realtors Dorothy Rivers* Selling Agent, and if said mortgage cannot be obtained, this agreement shall be null and void and all deposit monies shall be returned to the Buyer on or before date for settlement as provided herein subject however to the provisions in paragraph as follows:

(g) Buyer shall make a completed application in writing to a responsible mortgage lending institution for the aforementioned mortgage loan through the office of the agent named in _____ (f), (who for the purpose of negotiating for the said mortgage loan shall be considered the agent of the Buyer) within ten (10) days, it shall be the option of the Seller, within fifteen (15) days from the approval date hereon, to declare this agreement of sale null and void at which time all deposit monies paid on account will be forfeited.

Defendants first argue that plaintiffs failed to comply with paragraph (g) quoted above, which requires that a completed mortgage application be made within ten days of the signing of the agreement. As noted above, however, plaintiffs completed the application the same day they signed the agreement, thus clearly complying with paragraph (g).

Further examination of the agreement of sale indicates that in only one place are the words "time is

of the essence" or their equivalent mentioned. Lines 59-61, which follow immediately the provision for the payment of the down payment, provide: "upon the signing of the agreement; the additional sum of _____and 00/100 dollars ($_____) to be immediately due and payable, upon the owner's acceptance of this agreement which date is of the essence of this agreement . . ." The figure of $14,500 was typed into the spaces indicated and then obliterated by typewritten and handwritten marks. The next several lines indicate the amount of money due and payable upon the delivery of the deed, on which is typed in $15,400. No mention is made that this is of the essence of the contract.

Defendants do not claim that any money was due them upon their signing of the agreement according to lines 59-61. This, plus the obliteration of the money amount typed into that space, leads to the conclusion that this provision is totally inapplicable. Even if it did not, however, it still would not apply since courts will not extract a "time is of the essence" clause from one part of a contract and apply it to another: Morrell v. Broadbent, 291 Pa. 503, 140 Atl. 506 (1928).

Thus, no applicable provision of the contract provides that any time limit set was the essence of the contract. It must be determined, therefore, whether the mere setting of a date for obtaining a mortgage commitment, without more, is at the essence of a contract for the sale of real estate.

It is beyond dispute that unless specifically stated, or obviously intended by the parties as shown by their clear and unequivocal actions when making the contract, that the mere setting of a date does not make that time stated the essence of the contract.

"'It is a well-established general principle in equity that time is not ordinarily regarded as of the essence in contracts for the sale of real property unless it is so stipulated by the express terms thereof, or it is necessarily to be so implied.'" Carsek Corp. v. Stephen Schifter, Inc., 431 Pa. 550, 554-55, 246 A. 2d 365 (1968), quoting from 55 Am. Jur., Vendor & Purchaser, §110.

In the Carsek case, cited by defendants, the contract set a time for settlement within 30 days of the occurrence of certain conditions, "but in no case shall the time for settlement be longer than seven (7) months from the date of approval of this Agreement of Sale." The Supreme Court reversed the finding of the chancellor that this language made time of the essence of the contract. The court said, at p. 555: "When it is so easy to insert the commonly-used phrase 'time to be of the essence' when that is the desired result, we are loathe to ascribe that result to any other language."

Ladner on Conveyancing provides that "where no time is fixed for performance it may be performed within a reasonable time; and this is so even where a specific time is fixed in the agreement if it does not expressly provide that such time is of the essence." The treatise continues that if a time is stated but not said to be of the essence, "the law regards the failure to perform by the day fixed as not important enough to justify rescission by the other party." 1 Ladner, Conveyancing in Pennsylvania §6.05 (4th ed.).

Although courts may imply that a time stated is of the essence of the contract, either by actions taken before or after the making of the contract, the cases show this is to be done only in extraordinary situations. See Tolan v. O'Malley, 450 Pa. 214, 299 A. 2d 229 (1973).

Prima facie, time is not of the essence to a contract since in equity, the time of performance is to be regarded as immaterial when no serious change of circumstances affects the contract: Haverstick v. Erie Gas Co., 29 Pa. 254 (1857); Erie Gas Co. v. Haverstick, 56 Pa. 28 (1867).

Additionally, three trial court cases establish that the above rules apply to contract clauses requiring mortgage commitments by a certain date. See Miner v. Bobinis, 63 D. & C. 2d 668 (1973); Julius v. Woolridge, 59 D. & C. 2d 364 (1972); Session v. Yack, 18 D. & C. 2d 333 (1958).

As noted above, no provision in the contract makes the time for obtaining a mortgage commitment the essence of the contract. Furthermore, defendants have shown neither that that would lead to a conclusion that such a requirement was implied at the time of the making of the contract, nor a change in circumstances or any prejudice suffered at any later stage requiring that time be implied to be of the essence. This is especially so in light of the fact that defendants were notified on or before May 15 that plaintiffs' application had been tentatively approved subject only to formal notification. By this point, however, defendants had already given notice that they did not intend to go through with the deal. This indicates that the time element was not important to defendants but only serves now as an excuse to attempt to cancel their agreement.

## ISSUE III

Must plaintiffs aver with specificity the occurrence of conditions precedent to a contract, particularly tender of consideration?

Defendants have, at every step of this action, argued that plaintiffs' complaint was not specific enough in regard to allegations of tender. In an

opinion by this court on defendants' preliminary objections, it was held that paragraphs seven and eight of the complaint could reasonably be taken as alleging the occurrence of all conditions precedent. It was further held that under Pa.R.C.P. 1019(c), a plaintiff need only plead such occurrence generally, with the obligation on defendant to deny such occurrence with specificity.

Normally, the above reference to the prior opinion would suffice. Here, however, defendants have cited the case of Mellon Bank v. Joseph _____ Pa. Superior Ct. _____, 406 A. 2d 1055, 1058 (1979), decided after the opinion above, in support of their position. They quote from that case: "The allegation of tender does appear insufficiently specific, in particular as regards the amount offered and the date of tender."

An examination of the facts of this case reveals that it not only completely fails to support defendants' position, but that it supports the prior opinion of this court. In that case, Mellon Bank filed a complaint for a mortgage foreclosure against the Josephs, who filed an answer, new matter and three counterclaims. One of the items mentioned in the answer was that the Josephs had made several tenders of the amount owed, which Mellon refused. Mellon filed preliminary objections which the lower court sustained, dismissing the answer, new matter and counterclaims without leave to amend.

The Superior Court, in holding that leave to amend should have been granted for certain items, reviewed and discussed each element of the pleadings dismissed. In discussing the allegation of tender, the court made the above quote showing that such an allegation *in an answer* is not specific

enough, thus supporting the conclusions of this court on the preliminary objections. Thus we rely on our prior decision on this issue.

## ISSUE IV

Does the failure of plaintiffs to show proof of the acquisition of fire insurance pursuant to a contract requirement preclude plaintiffs from obtaining specific performance?

Defendants point to the record and argue that nowhere is there proof that plaintiffs obtained fire insurance as required by the terms of the contract; thus, since they have not shown compliance with the conditions precedent of the contract, they may not obtain its specific performance.

There has been no fire. Defendants have not argued that the insurance clause in any way became effective or critical to this case. Additionally, the applicability of the insurance clause and the plaintiffs' compliance with it has not been an issue in this case. The record shows that defendants have not raised this point prior to this stage in the proceedings. Therefore, they will not be permitted to raise it at this point. The pleadings have long been closed and trial has been completed. It is now too late to raise new issues.

## CONCLUSION

All defendants' contentions fail. Plaintiffs have shown the existence of a valid contract for the sale of defendants' equitable interest in the land, with the right to acquire legal title. The fact that the mortgage commitment was not formally made on the date required by the contract does not prevent

plaintiffs from gaining specific performance of the contract since the date stated was not of the essence of the contract, and the date and commitment was acquired was within a reasonable time of the date in the contract. Plaintiffs' complaint was adequate and, finally, the fire insurance clause is not at issue here.

Plaintiffs' action for damages likewise must fail since plaintiffs did not prove through any competent evidence any specific money damage resulting from the failure of defendants to convey title.

## CONCLUSIONS OF LAW

1. Plaintiffs and defendants entered into a valid, enforceable contract for the sale of defendants' interest in certain real estate.

2. The owner of an equitable title in real estate may validly contract to convey that interest and defendants herein did so. This is so even where this is known to the buyer at the time of the making of the contract.

3. A buyer who purchases an equitable title to land may specifically enforce such an agreement.

4. At the time of the making of this contract, both plaintiffs and defendants intended to enter into a valid contract for the sale of this property.

5. The requirement that plaintiffs obtain a mortgage commitment by May 15, 1978 did not make time of the essence of this agreement.

6. A mortgage commitment was obtained by plaintiffs within a reasonable time (4 days) of the date required by the contract and defendants suffered no prejudice from such delay.

7. No actions by the parties subsequent to the making of the contract lead to the conclusion that it was implied that time was of the essence.

8. In a complaint on a contract action, a plaintiff may allege the occurrence of conditions precedent, including tender, generally and it is the obligation of defendant to deny with specificity.

9. Plaintiffs' complaint was sufficient.

10. The fire insurance clause in the agreement of sale is not an issue in this case because not timely raised by defendants.

11. Plaintiffs are entitled to the specific performance of the contract.

12. Plaintiffs failed to prove the existence of any money damages.

## ORDER

And now, April 10, 1980, the attached findings of fact and conclusions of law are adopted and, for the reasons contained in the annexed opinion, it is ordered, adjudged and decreed that defendants James Myers and Christine Myers shall, within 30 days after final confirmation hereof, tender delivery of a sufficient deed in conformity with the agreement of May 5, 1978, conveying the subject property to plaintiffs in return for the balance of the agreed purchase price. In the event the parties cannot agree upon a date, time or place of closing, either party may apply to the court for an order fixing the date, time and place of closing. Defendants to bear costs.

This decree entered nisi to become final ten days after notice of the filing of this adjudication unless exceptions are filed thereto within such period.