J-A05004-17

2017 PA Super 145

| | | |
|---|---|---|
| IN RE: TRUST OF MARILYN | : | IN THE SUPERIOR COURT OF |
| MIHORDIN, DECEASED | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: VICKI MIHORDIN | : | No. 1084 WDA 2016 |

Appeal from the Order Entered June 24, 2016
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s):  No. 2014-660

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

DISSENTING OPINION BY BENDER, P.J.E.:                **FILED MAY 16, 2017**

I respectfully disagree with the Majority's decision to reverse the order granting the reformation of the 1998 deed and its conclusion that the evidence is legally insufficient to prove a scrivener's error or mistake to overcome the merger doctrine.

As the Majority indicates, the Pozzutos executed a real estate sales agreement ("1995 sales agreement") with the Mihordins, which expressly stated that the Mihordins would receive a deed to the subject property upon payment in full of the purchase price and that the property would revert back to the Pozzutos upon the death of the Mihordins.[1]  In 1998, after the

_____

[1] The 1995 sales agreement states, in its entirety, as follows:

AGREEMENT

THIS AGREEMENT, made this 28th day of March, 1995, by and between Mike Pozzuto and Lynda Pozzuto, his wife (hereinafter referred to as Sellers).

(Footnote Continued Next Page)

Mihordins completed the payments to the Pozzutos pursuant to the sales

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

AND

Richard L. Mihordin and Marilyn R. Mihordin, his wife (hereinafter referred to as Buyers);

WHEREAS, the Sellers are in the process of purchasing certain property in Kittanning, Pennsylvania; and

WHEREAS, the Buyers wish to purchase some of the aforesaid property from the Sellers;

NOW THEREFORE, THE PARTIES INTENDING TO BE LEGALLY BOUND, AGREE AS FOLLOWS:

1. Sellers will sell and Buyers will purchase a parcel of land of Buyers choice fronting on 100 feet of river for the sum of $20,000.00 payable at $5,000.00 on day of closing and $5,000.00 a year, each and every year for the succeeding three (3) years.

2. If Buyers decide to sell the aforesaid parcel, they give the Sellers the option to purchase the property for $20,000.00. Said option to be exercised within 90 days after written notice received by Sellers from Buyers.

3. If Sellers would default on the purchase of the said property, they must refund the Buyers all hand monies paid by Buyers to Sellers.

4. Upon Buyers payment of the full purchase price to Sellers, they will receive a deed subject to any encumbrances then existing on the property.

5. Upon the death of Buyers, the land is to revert back to Sellers.

6. If Sellers sell the complete parcel of land, they will deed over the property of Buyers to Buyers.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

agreement, the Pozzutos contacted Attorney Panella to request that he prepare the deed. Attorney Panella did not refer to the 1995 sales agreement in preparing the deed and, thus, he failed to include any reversionary interest in the deed. Instead, the 1998 deed executed by the Pozzutos transferred the property to the Mihordins in fee simple.

I believe that this is a clear case of scrivener's error which overcomes the merger doctrine, as further explained herein, and that reformation of the deed is the proper outcome in this case. This Court has long held that a trial court has the power to reform a deed to correct a scrivener's error. *See DiMaio v. Musso*, 762 A.2d 363, 366 (Pa. Super. 2000) (concluding trial court erred in failing to reform deed to correct scrivener's error that depicted wrong parcel of land); *Armstrong County Bldg. & Loan Ass'n of Ford City v. Guffey*, 200 A. 160 (Pa. Super. 1938) (upholding a decree directing the reformation of a deed to correct a scrivener's error).

As noted in the lower court's opinion, the Pennsylvania Supreme Court has outlined the following, well-defined principles to consider when determining whether reformation of a written instrument, such as a deed, is appropriate:

(1) [T]he mistake of a scrivener in preparing a deed, will[,] or other writing may be established by parol evidence and the instrument reformed accordingly[.]

(2) [W]hile generally, the mistake must be mutual, the rule is otherwise where, as herein, the [s]ettlor receives no consideration for the creation of a trust. In such a case a unilateral mistake on the part of the settlor is sufficient,

- 3 -

and it is immaterial that the beneficiary did not induce the mistake, or know of it or share in it.

(3) [W]hether the mistake be unilateral or bilateral, the quality of proof required to establish the existence of the mistake is the same; that proof of the mistake must be established by evidence that is clear, precise, convincing and of the most satisfactory character….

(4) [W]hile it is true that where the auditing judge sees and hears the witnesses, determines their credibility and the weight to be given their testimony, his findings, like those of a jury, will not be disturbed except for clear error; it is also the law that where a trial judge passes upon the question of whether the evidence introduced to reform a written instrument meets the standard of being clear, precise and convincing his ruling is open to review here.

*In re Duncan's Estate*, 232 A.2d 717, 720 (Pa. 1967) (internal citations and quotation marks omitted).

Applying these principles to the present case, the lower court noted that "in the case of a scrivener's error and mutual mistake, the remedy available is reformation of the deed," and it concluded that the Pozzutos satisfied their burden of providing clear, precise and convincing evidence of a scrivener's error through the testimony of Attorney Panella. Trial Court Opinion ("TCO"), 6/24/16, at 5. "[W]here an auditing judge sees and hears the witnesses, it is for him to determine their credibility and the weight to be given to their testimony because of their character, intelligence and knowledge of the subject, and his findings, like those of a jury, will not be disturbed except for clear error." *In re La Rocca's Trust Estate*, 192 A.2d 409, 412 (Pa. 1963). Based on my review of the record, I discern no clear error on the part of the lower court.

- 4 -

Attorney Panella testified that the intent of the 1995 sales agreement was to create a life estate in the Mihordins with the property reverting back to the Pozzutos upon their death.  N.T. Hearing, 2/23/16, at 23.  He further stated that the reason why the reversionary interest was not reflected in the deed is that he never referred to the 1995 sales agreement when drafting the document.  *Id.* at 27-28.  Lynda Pozzuto also testified at the hearing regarding her intent for the documents to include a reversionary interest.[2] She claimed that she did not become aware of the fact that the deed failed to include a reversionary clause until after her parents' death, and that if she would have known at the time the deed was executed, she would not have signed it.  *Id.* at 37-38.

I deem the foregoing testimony sufficient to support the lower court's conclusion that:

> Attorney Panella's actions of writing the deed without referring to the [1995] Sales Agreement resulted in the scrivener's error. Furthermore, he presented to this [c]ourt clear and convincing evidence that the parties to the deed were operating under a mutual mistake, that being the absence of the life estate in the deed.  Had they referred to the [1995] [s]ales [a]greement, they would have included the life estate with reversionary clause in the deed.

TCO at 5.

_____

[2] When asked what her understanding was regarding the 1995 Sales Agreement, Lynda Pozzuto responded:  "When my parents passed away, the property would go back to myself and my husband, Michael Pozzuto."  N.T. Hearing at 36.

As stated *supra*, "[t]he general rule, *in the absence of fraud or mistake, and of an intent to the contrary*, is that an antecedent contract for the purchase of land is merged in the deed…[.]  [U]pon the delivery and acceptance of the deed, there exists a prima facie presumption of merger." *Dobkin v. Landsberg*, 116 A. 814, 817 (Pa. 1922) (internal citation and quotation marks omitted; emphasis added).  "[T]o rebut the legal presumption [of merger], the intention to the contrary must be clear and manifest." *Id.* at 818.  Here, the Majority opines that the merger doctrine should prevail due to a lack of manifest intent in the record.  However, I believe that the lower court was correct in finding that the doctrine of merger does not apply to the present case, as it is clear that the deed does not accurately reflect the intention of the parties.  *See Carsek Corp. v. Stephen Schifter, Inc.*, 246 A.2d 365, 370 (Pa. 1968) (acknowledging the merger doctrine does not apply where the expressed intention of the parties is to the contrary).[3]

_____

[3] As the trial court explains:

> The Pennsylvania Supreme Court has held that "merger depends on the intention of the parties, as evidenced by the attending circumstances of each transaction."  [*Dobkin*], 116 A. at 817.  The intention of the parties "may be shown by their declarations, acts, or conduct at the time of execution of the agreement in question or from the terms of the writing itself." *Dick v. McWilliams*, 139 A. 745, 746 (Pa. 1927) (citing *Carrow v. Headley*, 25 A. 889 (Pa. 1893); *Moats v. Thompson*, 129 A. 105 (Pa. 1925)).  Yet, "[i]n some instances it may be shown by

*(Footnote Continued Next Page)*

The lower court determined that the 1995 sales agreement "serves as parol[] evidence reflecting the intent of the parties to have a life estate with reversionary interest in the deed." TCO at 7. There is no evidence in the record to suggest otherwise. Clause 5 of the agreement expressly states: "Upon the death of Buyers, the land is to revert back to Sellers." *See* 1995 Sales Agreement (attached as Exhibit "A" to the Pozzutos' Rule to Show Cause); *see also* footnote 1. The agreement further provides that a deed would be issued to the Mihordins upon payment of the full purchase price to the Pozzutos. *See id.* The 1998 deed failed to include a reversionary interest in accordance with Clause 5 of the sales agreement but, rather, transferred the property to the Mihordins in fee simple. This was clearly not the intent of the parties.

The Majority argues that the Pozzutos were negligent in failing to discover the discrepancy in the documents and, therefore, they do not deserve protection by means of reformation at this late date. However, this Court has previously determined that where "the elements required for reformation are present, the failure of the plaintiffs to discover the variance

*(Footnote Continued)* ───────────

> parol that an effect, which usually is given to a written instrument, was, as a matter of fact, not intended by the parties concerned." [***Dobkin***], 116 A. at 818.

TCO at 6.

… even if negligent, is not fatal to their right to have the deed reformed."
***Schwartz v. Gingerich***, 14 A.2d 623, 625 (Pa. Super. 1940) (citing ***Broida v. Travelers' Ins. Co.***, 175 A. 492, 494 (Pa. 1934)).

Finally, I agree with the lower court's finding that Attorney Panella's testimony regarding his preparation of the deed is not barred by the Dead Man's Act, as the Act is inapplicable "when the witness does not have an interest in the outcome of the proceeding, for in that case the witness would have no reason to misrepresent his dealing with the decedent." ***Visscher v. O'Brien***, 418 A.2d 454, 458 (Pa. Super. 1980). ***See also*** TCO at 8.

Accordingly, I would affirm the June 24, 2016 order granting the Pozzutos' petition for reformation of the 1998 Deed.