J-A24001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DMITRY KRUGLOV | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FEDERAL NATIONAL MORTGAGE | : | No. 2103 EDA 2023 |
| ASSOCIATION AND KARAMO KABO | : | |

Appeal from the Order Entered July 3, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2018-010274

BEFORE: LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED NOVEMBER 25, 2024**

Dmitry Kruglov appeals, *pro se*, from the order entered in the Court of Common Pleas of Delaware County, granting summary judgment in favor of Federal National Mortgage Association (Fannie Mae) and dismissing Kruglov's amended complaint.[1]  After careful review, we affirm.

The instant matter concerns an unrealized real estate transaction between the parties.  On October 10, 2018, Fannie Mae listed a foreclosed property (Property), 65 East Greenwood Avenue in Lansdown, for sale through a licensed real estate broker.  Kruglov submitted an offer on the Property on October 16, 2018.  In early-November, Kruglov sent Fannie Mae a $5,000.00 deposit for the Property.

---

[1] Kruglov listed Karamo Kabo as a defendant/appellee in his caption on appeal. However, he was not a party to the underlying action.

On November 13, 2018, the parties executed a real estate purchase contract (Contract) for the Property and a real estate purchase addendum (Addendum). The Contract listed a $117,000.000 purchase price for the Property, a mortgage contingency deadline of November 23, 2018, and a settlement date of December 7, 2018. With respect to the mortgage contingency, the Contract stated that:

> If [S]eller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, [November 23, 2018,] Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

Real Estate Purchase Contract, 11/13/18, at ¶ 8(B)(1). Moreover, the Contract explicitly stated that Fannie Mae may terminate the Contract by written notice to Kruglov after November 23, 2018, if documentation demonstrating that a lender has conditionally or outright approved his mortgage application either fails to satisfy the specific financing conditions set forth in paragraph 8A of the Contract or if the mortgage contains any condition not specified in the Contract. *Id.* at ¶ 8(B)(2).

A utility inspection notice form (Inspection Notice) was also appended to and made a part of the parties' Contract. The Inspection Notice included the following relevant language:

> **Seller will not turn on any utilities for use in buyer's inspections.** If Purchaser wants the utilities turned on for

inspections, **the cost to connect the utilities and any charges for service will be solely at the expense of the Purchaser.** Any actions required to turn on the water or other utilities will be performed by the Purchaser's Contractor. If the condition of the [P]roperty does not support the connection of utilities, no repairs will be done by Purchaser or Seller to make the [P]roperty available for connection.

* * *

The Purchaser must make arrangements to have the utilities disconnected immediately after the inspection is completed. The Listing Agent will be responsible for insuring all utilities have been disconnected.

Any additional inspections outside the allowed inspection period will require approval by Fannie Mae.

The Selling Agent agrees to submit the **HECM Utility Inspection Request** form at least 48 business hours prior to the requested appointment. Should there be a need to reschedule an inspection or cancel, the Selling Agent will need to email the Listing Agent who can escalate any issues to Fannie Mae.

**Note: It is preferred that all inspections are scheduled Monday-Friday. Weekend inspections are acceptable but with the contingency that all utilities are operable and all parties have confirmed attendance by the close of business the Friday before inspection.**

Utility Inspection Notice Form, 11/9/18 (emphasis added and in original).

The Addendum included a "Time is of the Essence" clause stating, "it is agreed that time is of the essence with respect to all dates specified in the Agreement.[2] This means that all deadlines are intended to be strict and absolute." Real Estate Purchase Addendum, 11/19/18, at § 2(a). Finally, the

---

[2] The Addendum states that "[a]s used in this Addendum, the Contract, Addendum[,] and any riders thereto shall be collectively referred to as the 'Agreement.'" Real Estate Purchase Addendum, 11/19/18, at 1.

Addendum stated that if closing did not occur by December 7, 2018, "the Agreement is automatically terminated" and the seller may retain any earnest money deposit as liquidated damages. *Id.* at § 2(b).

On November 20, 2018, Kruglov sent Fannie Mae a proposed amendment to the Agreement attempting to change the mortgage commitment date and the settlement date and also extend the inspection contingency period. Fannie Mae refused to agree to change the mortgage commitment date or inspection contingency period, but stated it would be amenable to changing the settlement date to December 21, 2018. However, when Kruglov countered that he could not meet the original mortgage contingency date, Fannie Mae never executed any of Kruglov's proposed amendment. Thus, the original mortgage commitment and settlement dates remained. *See* Real Estate Purchase Addendum, 11/19/18, at § 2(b) ("The closing shall take place on [the Settlement Date] on or before 12/07/2018[,] **unless extended in writing signed by the Seller and the Purchaser or extended by the Seller under the terms of the Agreement**.") (emphasis added); *see also Wilcox v. Regester*, 207 A.2d 817, 821 (Pa. 1965) ("An agreement may be modified with the assent of both contracting parties if the modification is supported by consideration.") (citation omitted).

On November 21, 2018, in conformity with the Inspection Notice, Kruglov attempted to activate the Property's utilities for an inspection. However, he discovered that the Property had an outstanding utility company

- 4 -

balance. In an effort to proceed with the scheduled inspection, Kruglov paid the outstanding utility balance.

On December 4, 2018, Fannie Mae sent Kruglov a notice to terminate the Agreement as Kruglov had failed to submit documentation that he had secured a mortgage on the Property in accordance with ¶ 8(B)(1) of the Contract. Kruglov did not sign the notice. On December 10, 2018, three days after the parties' agreed-upon settlement date, Fannie Mae executed the notice of termination.[3]

On December 31, 2018, a *lis pendens* was filed on the Property. On December 28, 2018, Kruglov filed a complaint against Fannie Mae alleging negligence, breach of contract, fraudulent inducement, and breach of the covenant of good faith and fair dealing.[4] Two months later, Fannie Mae filed preliminary objections to the complaint contending that it owed no duty to Kruglov and that, as it relates to the breach of contract action, Kruglov failed

---

[3] Despite the Addendum's language to the contrary, Fannie Mae returned Kruglov's deposit monies rather than retaining it as liquidated damages.

[4] To the extent that Kruglov claims Fannie Mae breached its own "internal policies and procedures that govern its handling of the contracts with general public," Appellant's Brief, at 16, we find he is not entitled to any relief on appeal. A breach of a covenant of good faith and fair dealing is subsumed within a breach of contract action; it is not an independent action. ***See LSI Title Agency, Inc. v. Evaluation Servs.***, 951 A.2d 384, 391-92 (Pa. Super. 2008). Here, the parties' agreed upon contract language was clear and unambiguous—Fannie Mae was not required to amend any mandatory contractual due dates, but was permitted to terminate the Agreement if Kruglov was unable to provide a loan commitment on or before November 23, 2018. Because Kruglov was unsuccessful on his breach of contract claim, he, therefore, cannot succeed in any subsumed claim. ***See infra*** at 8-9.

to attach a copy of the Agreement. *See* Pa.R.C.P. 1019(i). On February 6, 2019, Kruglov filed an amended complaint.[5]

On July 7, 2022, Fannie Mae filed a motion for summary judgment. After a hearing, on October 31, 2022, the Honorable Spiros Angelos[6] denied the motion, without prejudice, and ordered that all discovery in the matter be completed by January 31, 2023. In January 2023, Fannie Mae filed motions for protective orders seeking to strike Kruglov's notices of deposition relating to Fannie Mae employees, and directing him to cease all direct contact with their employees. Fannie Mae also filed motions to stay, quash and/or issue a protective order prohibiting re-deposing two non-party witnesses. Kruglov filed responses to the motions for protective orders.

On February 2, 2023, Fannie Mae filed another motion for summary judgment. On June 15, 2023, the court held oral argument on Fannie Mae's summary judgment motion. Following argument, on July 3, 2023, the trial court granted summary judgment in favor of Fannie Mae and against Kruglov "on all claims asserted in [his] complaint." Order, 7/3/23.

_____

[5] As Fannie Mae recognizes in its brief, "[o]ver the next four-plus years, written discovery was exchanged, depositions conducted and discovery motions filed. As discovery progressed, Kruglov repeatedly refused to accept Fannie Mae's discovery responses as his focus shifted from the actual dispute to the discovery process itself." Appellee's brief, at 1.

[6] Judge Angelos recused himself from the case and the case was then assigned to the Honorable John J. Whelan.

Kruglov filed a timely notice of appeal.[7]  On appeal, Kruglov raises the following issues for our consideration:[8]

(1)    Whether the trial court abused its discretion and/or violated due process by [s]ua [s]ponte declaring that discovery is over, contrary to the standing scheduling order dated 02-24-23?

(2)    Whether the trial court erred by failing to review factual and procedural history, as well as documentary evidence submitted by the parties, so [as] to interpret every question of material fact in favor of [the] non-moving party?

(3)    Whether the trial court abused its discretion by denying [Kruglov's] request to complete outstanding discovery?

(4)    Whether the trial court violated [Kruglov's] due process rights?

(5)    Whether the trial court violated [Kruglov's] equal protection rights?

(6)    Whether the trial court erred by fail[ing] to deny [Fannie Mae's m]otion for summary judgment on the grounds that discovery had not yet been completed?

Appellant's Brief, at 15.

_____

[7] Kruglov's notice of appeal states that he is also appealing from the July 7, 2023 order that granted Fannie Mae's motion for a protective order, its motion to quash, and its objection to subpoena and denied Kruglov's motion to extend discovery.  However, since that order was filed *after* the court granted summary judgment and dismissed Kruglov's complaint, those motions should have been denied as moot.  **See** Pa.R.A.P. 341(b) (order dismissing all claims and parties considered final).  Thus, we confine our review to the appealable order granting Fannie Mae's summary judgment motion and dismissing Kruglov's complaint.

[8] From the record it does not appear that the trial court ordered Kruglov to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

"In determining whether summary judgment is proper, a court must examine the record in the light most favorable to the non-moving party, and all doubt must be resolved against the entry of such a judgment." ***Kalina v. Eckert***, 497 A.2d 1384, 1385 (Pa. Super. 1985).

Because contract interpretation is a question of law, this court's review is *de novo*, and our scope of review is plenary. ***See Bucks Orthopaedic Surgery Associates, P.C. v. Ruth***, 925 A.2d 868, 871 (Pa. Super. 2007). "In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." ***Humberston v. Chevron U.S.A., Inc.***, 75 A.3d 504, 510 (Pa. Super. 2013) (citation and quotation marks omitted). "The intent of the parties to a contract is to be determined solely from the express language contained therein." ***Rusiski v. Priobonic***, 515 A.2d 507, 510 (Pa. 1986) (citation omitted). Finally, "[t]ime is not ordinarily regarded as of the essence in contracts for the sale of real property[,] unless it is so stipulated by the express terms thereof, or it is necessary to be implied so." ***Carsek Corp. v. Stephen Schifter, Inc.***, 246 A.2d 365, 368 (Pa. 1968) (citation and quotation marks omitted).

Here, the language of the parties' contract was clear and unambiguous— if Fannie Mae did not receive documentation demonstrating Kruglov had received mortgage approval by November 23, 2018, it could terminate the Contract by written notice, or if closing did not occur by December 7, 2018, the Agreement is automatically terminated. Kruglov failed to fulfill either of

these conditions. Thus, by the express terms of the Contract, Fannie Mae had the right to terminate the parties' Agreement. ***Carsek Corp.***, ***supra***. Accordingly, because there was no genuine issue of any material fact and the right to judgment in Fannie Mae's favor was clear and free from doubt, the trial court properly granted summary judgment. ***See Phelps v. Caperoon***, 190 A.3d 1230 (Pa. Super. 2018); ***see also Kalina***, ***supra***.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/25/2024</u>